[Civ. No. 6391.  Third Appellate District.—July 5, 1940.]

JOSEPH ALLER, Appellant, v. BERKELEY HALL SCHOOL FOUNDATION (a Corporation) et al., Respondents.

Howard F. Shepherd for Appellant.

Girard F. Baker for Respondents.

THOMPSON, Acting P. J.—The plaintiff brought suit for declaratory relief from a building restriction contained in his

deed of conveyance to lot 317 of tract 7005 in Beverly Hills, according to the map thereof on file in the recorder's office of Los Angeles County. The deed contains a provision that the lot and "all buildings to be erected on Doheny Drive" shall be used exclusively for private residences. Lot 317 is a corner lot 70 by 120 feet in size fronting on Doheny Drive, but its northern side also borders on Burton Way. The deed contains another provision that "all lots *having a frontage* on Burton Way may be used for either residence or business purposes". The court held that lot 317 was subject to the restriction confining its use to residence buildings only. From that judgment this appeal was perfected.

November 5, 1924, Berkeley Hall School Foundation, a corporation, owned lot 317 of tract 7005, a subdivision of Beverly Hills. The Bank of America is trustee of the corporation, in the handling of that tract. On the last-mentioned date, for a valuable consideration, the lot was sold and conveyed to the plaintiff, who is the owner thereof. The tract consists of 17 blocks of land bounded north by Burton Way, east by Preuss Road, south by Wilshire Boulevard and west by Doheny Drive. The tract is separated into lots and blocks with intervening streets and alleys. Each lot is designated by a separate number. The blocks are divided into two tiers of lots extending east and west. These lots front either east or west on streets running north and south, except that there are two tiers of lots on the north and south portion of the tract which face on either Wilshire Boulevard or Burton Way. All of the 29 lots in the most westerly portion of the tract, including lot number 317, face Doheny Drive, except one lot at the southern extremity of that tier which faces Wilshire Boulevard. It is true that lot 317 and the other corner lots in that tier also abut along their side lines on other streets. The entire tract is subject to these restrictions.

The deed of conveyance contains elaborate specific restrictions affecting the location, character and cost of all buildings to be constructed thereon. It specifically exempts from the exclusive residence requirement, with respect to that western tier of lots, one lot, number 350, which is "governed by the same rules" applicable to lots facing on Wilshire Boulevard, upon which "either residence or business" buildings may be constructed. This exception with respect to lot 350 proves the clear intention of the grantor to require all other lots in

that tier, including lot 317, to be used exclusively for residence purposes. The further provision specifying the location of the buildings on that particular lot also accords with the finding that it was intended to be used only for residence purposes.

The material restrictions of the deed which are involved in this case provide as follows:

"All buildings to be erected on Doheny Drive, except lot 350, *shall be used exclusively as private residence,* with a limit of one house to each lot, except lots 360, 317 and 371, which may be occupied with one or more houses, and no residence to be erected on said lots shall cost less than $5,000.00. The foundations of all said buildings shall show a set-back from the front property line of 20 feet, and all driveways leading to the rear of said premises, excepting lot 350, shall be placed on the south side of said lots. . . . Any outbuildings, private stable or garage erected in conjunction therewith shall be located not less than 75 feet from Doheny Drive. Lot 350 is governed by same conditions as apply to property fronting on Wilshire Boulevard.

.    .    .    .    .    .    .    .    .    .    .    .    .

"All lots having a frontage on Burton Way may be used for either residence or business purposes, . . . "

It is also provided that a breach of any condition in the deed, after thirty days' notice thereof and a failure to remedy the breach, shall result in a forfeiture and reversion of the property to the grantor, its heirs, successors or assigns.

There is no evidence that the plaintiff has constructed any building on his lot, or that he intends or desires to construct a business building thereon. Apparently the lot is still vacant after twelve years of ownership of the property.

The court found that plaintiff's lot number 317 fronts 70 feet on Doheny Drive, and on the contrary that it does not front on Burton Way; that the use of the lot is confined to residential purposes and that the grantor is entitled to enforce the restrictive clauses contained in the deed. A judgment was accordingly rendered against the plaintiff. From that judgment this appeal was perfected.

We are of the opinion the evidence supports the findings and judgment. This is not a suit to rescind a deed for breach of a restriction or condition subsequent contained therein. It is a mere suit for declaratory relief to construe

the terms of the deed. The provisions of the deed restricting the use of lot 317 to residential purposes in accordance with a common plan affecting the entire tract is clear and unambiguous. The exceptions from that residential restriction of all lots "having a frontage" on Wilshire Boulevard and Burton Way, and the specific exception of lot number 350, fronting on Doheny Drive, clearly support the findings of the court that lot 317 is subject to that restriction. All other specific exceptions mentioned in the deed reinforce that conclusion.

█ The intention of the parties to the deed should control the construction of the instrument. The object in construing a deed is to ascertain the intention of the parties, and especially that of the grantor, from the words which have been employed in connection with the subject-matter, and from the surrounding circumstances. (*Burnett* v. *Piercy*, 149 Cal. 178 [86 Pac. 603] ; 9 Cal. Jur. 324, sec. 188; 18 C. J. 252, sec. 198; 3 Thompson on Real Property, p. 70, sec. 1980.)

It is clear that the restriction in the deed which provides that "all buildings to be erected on Doheny Drive" shall be exclusively for private residences, means that all lots fronting on Doheny Drive are to be used for residential purposes. It is evident from the plot of tract number 7005 and from the restrictive provisions of the deed that the narrow portion of each lot adjacent to Doheny Drive is considered the *front* of such lots, with the one exception of a lot at the southwest corner of that tract which fronts on Wilshire Boulevard. This is confirmed by the other restrictive clause which provides that "All lots *having a frontage* on Burton Way may be used for either residence or business purposes."

█ The word "front" is sometimes carelessly used to indicate any external line of property *bordering* on a street or road, when the evident purpose is to merely designate the lines which abut thereon. Strictly speaking, the word "front" is used to distinguish that portion from the rear or sides of an object. As the term is correctly applied to lots in a city tract of land, it means that side of the land toward which the house or building thereon faces, or is expected to face. █ The construction of the terms "facing" and "having a frontage" as they are employed in the deed under consideration, therefore depends on the intention with which they were used by the parties. In the present case the meaning of those terms as they are employed in the deed seems to be clear. All

of the lots in the tract of land which is involved are oblong in shape. They are all much longer than they are wide. In every instance the narrow portion of the lots face the various streets, except with respect to corner lots, which necessarily also abut on side streets. But in every such instance it is clear that the buildings thereon are to be constructed to face the streets upon which the narrow lines of the lots abut. In the case of *Rhinehart* v. *Leitch,* 107 Conn. 400 [140 Atl. 763, 764], it was decided that the narrow end of a lot "fronts" on the street upon which it abuts, and that it does not front on another street although it was a corner lot which abutted on both streets. That case holds that the end of a bare lot fronts on the street upon which it abuts, toward which the house, when it is constructed, is intended to face according to the plan or usage in the particular block or district. In the present case it is apparent that every house or building on each lot adjacent to Doheny Drive, except the most southerly one on Wilshire Boulevard, is expected to face Doheny Drive. Therefore the restriction applies to lot 317.

Reasonable building restrictions contained in a deed of conveyance with respect to the character, location and cost of construction of buildings to be erected in accordance with a general plan affecting entire tracts in modern cities, are uniformly upheld as valid. (*Firth* v. *Marovich,* 160 Cal. 257 [116 Pac. 729, Ann. Cas. 1912D, 1190]; *Childs* v. *Newfield,* 136 Cal. App. 217 [28 Pac. (2d) 924]; 9 Cal. Jur. 360, secs. 214, 215; 8 R. C. L. 1117, sec. 178; 18 A. L. R. 451, note.) It has been determined that such building restrictions, accompanied by a provision forfeiting title to the land for a breach thereof, constitute conditions subsequent, the breach of which may defeat the grantee's title. (*Los Angeles & Arizona Land Co.* v. *Marr,* 187 Cal. 126 [200 Pac. 1051]; *Alderson* v. *Cutting,* 163 Cal. 503 [126 Pac. 157, Ann. Cas. 1914A, 1]; 9 Cal. Jur. 361, sec. 215.)

Under the circumstances of this case the grantor parted with the title to the lot in question subject to compliance with the building restrictions contained in the deed. He retained no actual estate in the property. The grantee takes the entire estate of the grantor, and until the conditions are breached the grantee is the owner of the land in fee simple absolute. The interest which the grantor reserved in the property is merely a residue therein coupled with the power

to terminate the estate and recover possession thereof in the event of a breach of the expressed conditions. The grantor merely retains a conditional "power to terminate" the estate conveyed for breach of conditions subsequent. This is in accordance with the rule that a grantor may convey an estate in land, retaining a mere right of reversion of title for breach of conditions. (*Parry* v. *Berkeley Hall School Foundation,* 10 Cal. (2d) 422, 426 [74 Pac. (2d) 738, 114 A. L. R. 562].)

It is true that the law does not favor forfeiture of property, and that such provisions in a deed should be construed strictly against the grantor for the reason that they tend to destroy estates. (Sec. 1442, Civ. Code: *Victoria Hospital Assn.* v. *All Persons,* 169 Cal. 455 [147 Pac. 124] ; 9 Cal. Jur. 341, sec. 200; 3 Thompson on Real Property, p. 58, sec. 1970.) When, however, the language of the deed, construed in the light of the surrounding circumstances and of the valid purpose for which the restrictions are imposed, is clear and unambiguous, the provisions including forfeiture of title for breach of the conditions may be enforced. In most of the cases called to our attention the courts have *strictly* construed conditions subsequent in deeds of conveyance to *prevent* forfeitures of title since that harsh penalty is not favored. Reasonable building restrictions applicable to a general plan with respect to entire districts in cities are uniformly recognized as beneficial to the grantor, and to the residents of the entire subdivision of such tracts. Such restrictions are uniformly upheld. A purchaser of such lots who accepts his deed and records it with knowledge of the fact that it contains reasonable building restrictions may be deemed to have consented thereto. In the present case the plaintiff accepted his deed to the lot in question in 1924, and raised no question with respect to those restrictions for twelve years until he filed this suit for declaratory relief. We are of the opinion the restrictions are not unreasonable or uncertain. On the contrary, they are valid and binding. The findings and judgment are supported by the evidence.

The judgment is affirmed.

Paulsen, J., *pro tem.,* and Tuttle, J., concurred.