J.J. FINKELSTEIN, Linda Finkelstein, Carol Sue Finkelstein, and Brookstone Properties, Inc., Appellants,

v.

SOUTHAMPTON CIVIC CLUB, W. Ronald Robins, Stephen C. Cook, J. Michael Bell, L. Giles Rusk, and Coke Wilson, Appellees.

No. 01–83–0390–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 21, 1984.

P.J. Murphey Harmon, Reynolds, Allen & Cook, Houston, for appellants.

Gregory Neill Jones, Hill & Parker, Houston, for appellees.

Before EVANS, C.J., and DUGGAN and BASS, JJ.

## OPINION

DUGGAN, Justice.

This is a suit to enforce deed restrictions. The question presented is whether, consistent with valid deed restrictions, a residential corner lot owner in Southampton Place, an addition to the City of Houston, may subdivide an original corner lot into two smaller residential lots, only one of which thereafter abuts the front street, so that the existing improvements on each of the resulting smaller lots may thereafter be used as separate single family dwellings.

Plaintiffs-Appellees, Southampton Civic Club, an unincorporated civic association, and five resident owners of homes in Southampton Place, a residential subdivision in Houston, brought this action against defendants-appellants, J.J. Finkelstein, Linda Finkelstein, Carol Sue Finkelstein and Brookstone Properties, Inc. The plaintiffs alleged that the defendants violated the Southampton Place restrictions by the manner of their subdivision of an oversized corner lot into two separate and distinct lots, each with its own separate residential structure. The defendants answer-

ed, admitting that they had subdivided the property in question, denying that the subdividing violated any deed restriction applicable to the property, and alleging, among other matters, the affirmative defenses of laches, waiver and estoppel. They also filed a counterclaim asserting slander of title.

The plaintiffs thereafter filed a motion for summary judgment. The trial court granted partial summary judgment, awarded injunctive relief, and disposed of all matters except attorney's fees due plaintiffs under Tex.Civ.Stat.Ann. art. 1293b (Vernon 1980). Following a separate hearing for partial judgment after trial, attorney's fees were awarded and final judgment was entered.

The corner lot in question was purchased by Brookstone Properties, Inc. on April 6, 1979. At that time, and at all material times thereafter, two residential structures were located on the lot. The principal structure, a two-story brick house, is located on the southern portion of the property and a two-story frame house is situated on the northern portion. On June 18, 1979, Brookstone Properties, Inc. executed a conveyance to J.J. Finkelstein (who was also the president of Brookstone Properties, Inc.) and his wife, Linda Finkelstein, covering the south 55.2 feet of the lot, and a conveyance to Carol Sue Finkelstein, mother of J.J. Finkelstein, covering the north 44.375 feet of the lot. While Carol Sue Finkelstein rented the two-story wooden frame building to one or more tenants during 1980, J.J. Finkelstein and wife, Linda Finkelstein, never rented out the two-story brick house. A survey plat showing the relative location of the buildings and the subdivided portions of the lot was introduced into evidence and is reproduced below.

**RALPH C. HILTON**
CONSULTING    ENGINEERS
& ASSOCIATES
ENGINEERING·PLANNING·SURVEYS·DESIGN

ALBANS ROAD (60'R.O.W.)
(26' ASPHALT)

GF

PLAT OF PROPERTY FOR:

LOT 9 & E. ½ OF 8    BLOCK 37
SOUTHAMPTON PLACE
VOL 6    PAGE 52    H.C. M    R
HOUSTON HARRIS COUNTY, TEXAS
SCALE 1" = 20'

DATE NOV. 25, 1981

THERE ARE NO ENCROACHMENTS AND ALL IMPROVEMENTS LIE WHOLLY
WITHIN THE PROPERTY LINES. EXCEPT WHERE SHOWN.

A SURVEY WAS THIS DAY MADE ON THE GROUND
OF THE PROPERTY LEGALLY DESCRIBED HEREON
AND IS CORRECT.

The summary judgment proof shows that the two-story brick structure was used as a family residence for many years. Behind the main residence were two smaller structures: the two-story wooden frame building, and a smaller one-story building, "presumably originally constructed as a garage or storage facility." The only entrance to the two-story wooden frame building, designated in one of the affidavits as a "servant's quarters," is located on the south side of the structure, and faces the rear of the primary residence. The buildings have remained in their present condition, without material modification, at all times since the lot was first purchased by Brookstone Properties, Inc. The parties stipulate that the Southampton Place restrictions are in full force and effect, and the defendants acknowledge that they are parties to and beneficiaries of the restrictive covenants imposed on all residential lots in the subdivision.

The judgment appealed from finds that the defendants' subdivision of the original lot into two separate lots violates three specific provisions of the deed restrictions, more fully set out hereinafter, which (1) establish fronting and entrance direction requirements, (2) require reservation of an easement in deeds, and (3) prohibit multiple housing.

The judgment further decrees that the conveyances of June 18, 1979, by and among the defendants, J.J. Finkelstein, Linda Finkelstein, Carol Finkelstein, and Brookstone Properties, Inc., are null and void; enjoins defendants from effecting any subsequent east-to-west subdivision of the property; orders the execution and recording of conveyances so as to result in a reunification of the subdivided lots; and enjoins defendants from renting or leasing any structure on the original lot apart from defendants' dwelling house to anyone, or from renting space to others in defendants' dwelling house as a separate housekeeping unit, "it being the express purpose of this Order and Decree that the sole use of the Original Lot be limited to that of a single family residency." Finally, the judgment grants attorney's fees to plaintiffs in the amount of $8,500, with additional sums of $2,500 and $1,500 in the event of appeals, and denies all other relief requested.

Appellants assert six points of error.

■ Appellants allege in their first point of error that the trial court erred in granting summary judgment because, as a matter of law, the subdivision's deed restrictions do not prohibit the resubdivision of existing lots, and a prohibition against resubdivision cannot be inferred or implied. We recognize that the Southampton Place restrictions do not expressly prohibit resubdivision of the lots, and that such a covenant is not implied from the mere making and filing of a plat showing the different lots and selling lots in conformity with such plat. *McDonald v. Painter*, 441 S.W.2d 179 (Tex.1969). However, neither plaintiffs' motion for summary judgment nor the judgment entered are based on the premise that the act of resubdividing a lot in Southampton Place is, *per se*, a violation of a restrictive covenant. Instead, plaintiffs urge that the manner of division of defendants' lot ["in an east-west fashion instead of the more natural north-south direction"] had the *effect* of violating certain provisions of the deed restrictions. Likewise, the judgment appealed from found that the defendants' subdivision of the original lot into two separate lots "resulted in violations" of the three specific deed restrictions referred to above. Defendants' argument that an inference of a prohibition against subdivision of lots cannot be allowed is irrelevant because the court drew no such inference. The first point of error is overruled.

Appellants' second and third points of error are presented in the alternative. The second point urges that, as a matter of law, appellants' actions did not violate the three listed deed restrictions, and that the trial court erred in so finding. The third point urges that if the court made fact findings based upon conflicts between appellants' and appellees' affidavits, then disputed issues of fact exist with respect to whether the partition of the lot violated the deed

restrictions, and summary judgment was improper. The trial court's action in granting summary judgment presupposes that the court based its decision on undisputed facts; accordingly, appellants' second point of error, urging no violation of the three cited restrictions as a matter of law, is the appropriate point for our consideration.

As stated before, no deed restriction bars resubdivision of Southampton Place lots *per se.* However, appellees urge that the three restrictions referred to, construed in combination, impose limits on the type of resubdividing available. The restrictions require that the subject corner lot (1) be accessible from both the front street and the common rear alleyway, (2) contribute an area at the rear of the lot to a continuous easement parallel and adjacent to the common alleyway, for mutually desirable utilitarian purposes, and (3) be restricted to the exclusive use of a residence for a single family.

The first of the three covenants that the court found the defendants to have violated states:

> Any and all buildings that may be constructed upon corner lots shall *front upon the proper street* and not on a side street and shall *have its* [sic] *main entrance on the proper front street.* (Emphasis added).

The record shows that both structures, the main residence and the frame building, were located on the property at the time of the defendants' partition, that both face Albans, and that the front entrance to each faces Albans.

Plaintiffs urge that, after appellants' resubdivision, the rear building no longer complies with this restriction since (1) the resulting lot on which it is now situated no longer fronts upon Albans, *i.e.,* no longer abuts or is contiguous with Albans, and (2) the main entrance of the rear structure no longer has its main entrance "on" Albans. We agree with both contentions.

Although appellants cite no evidence or case authority, they urge that the quoted fronting and entrance restriction is to regulate appearance only, and that its "clear

and unequivocal meaning" is to assure uniformity of appearance by having all buildings on corner lots face the same direction. However, appellants acknowledge that no such "appearance" restriction governs front location or entrance direction for buildings on interior lots. Such an omission of appearance requirements on interior lots suggests that this corner lot restriction's primary purpose is a *use* regulation, intended to orient and channel each corner residence's traffic flow between the front street and the common alleyway, and away from the side street. Such a traffic flow pattern is consistent with interior lot traffic—oriented between front street and alley. Side streets are thus kept clear of usual "front" entrance traffic. The restriction is necessary only for corner lots because of the nonfeasibility of subdividing an interior lot to "landlock" or isolate it from the front street. The quoted fronting and entrance restriction on corner lots therefore bars a resubdivision that isolates a resulting lot from either the front street or the alleyway, and thus prohibits the precise sort of subdivision here attempted.

Appellants propose that the term "front upon" should be held to be synonymous with the word "face." However, they cite no case law dealing with fronting requirements in restrictive covenant cases, either from Texas or any other jurisdiction, which has held a lot to "front" upon a street that is not contiguous with or bordering the lot in question. To the contrary, cases do affirmatively define a "front street" as the street upon which a lot "abuts," or "borders." *J.L. Hennessy and Associates v. Griffin,* 155 N.Y.S.2d 378 (1956); *Aller v. Berkeley Hall School Foundation,* 40 Cal. App.2d 31, 103 P.2d 1052 (1940).

■ The intention that the front of any corner lot building abut, or border upon, or be contiguous to the referenced front street is reinforced by the inclusion within the same covenant of the requirement that buildings have their "entrance on the proper front street." Entrance is commonly understood as "means of entry." There is

no means of entry from Albans, the proper front street, onto appellants' resubdivided rear lot that does not require a trespass upon the resubdivided front lot. If the resubdivided lots had abutted and been contiguous to both the front street and the alleyway, they would not have been in violation of this covenant. It is undisputed that a fence now built around the front structure makes entry to the rear building possible only by means of the side street. The trial court correctly found that the cited deed restriction governing fronting and entrance requirements was violated by appellants' resubdivision of the lot in the manner done.

The second of the covenants in question that we examine is, in fact, the third listed in the final judgment as being found by the court to have been violated. It states:

> Each and every deed or other instrument which may vest in any person or corporation any title or interest in any lot, lots, or other property in said project or addition, shall expressly reserve to the trustee and its successors a right of easement and the right of ingress or egress to a strip of land three (3) feet in width over, along and across the extreme rear end of each and all such lots and tracts.

Neither of appellant Brookstone's deeds to the other appellants includes the reservation of the easement.

Appellants urge three reasons why the injunction requiring them to rejoin the property in question is improper as a means to remedy this violation. First, they argue that their deeds include provisions specifically incorporating all of the restrictions of Southampton Place Addition, such that the subject easement is therefore a part of their deeds by implication. Second, they contend that the trial court should simply have required them to amend their deeds to contain the easement, and thus avoid granting more equitable relief than was necessary. Finally, they urge that the granting of equitable relief to enforce this restriction is inappropriate since at least one of the individual plaintiffs holds title to his property in Southampton Place under a deed which contains no specific right of ingress or egress.

The "lot" or "lots" referred to in the restriction are those set out in the subdivision's original plat. See *Wade v. Magee*, 641 S.W.2d 321 (Tex.App.—El Paso 1982, writ ref'd n.r.e.). The quoted restriction spells out an easement design and scheme on the part of the subdivision's developers that has resulted in a continuous and unobstructed three foot border of land contiguous with the alleyways drawn on the original plan. Appellants' arguments center on the omission of the described easement in their deeds; they ignore the fact that their east-west partition line, creating a north lot and a south lot (or a "front" lot and "rear" lot) makes it impossible for them to grant, along the front lot's rear boundary, a three foot easement which is adjacent to the alleyway and continuous with the identical easement on the adjoining property. Only a rejoinder of appellants' resubdivided lots will remedy the improper resubdivision. The trial court correctly found the easement reservation restriction to have been violated.

The third covenant found to have been violated (the second listed in the judgment) reads:

> No apartment house or duplex will be permitted in the addition; the object of this provision being to prohibit multiple housing throughout the entire addition.

The restrictive covenant here set out was construed in *Pardo v. Southampton Civic Club*, 239 S.W.2d 141 (Tex.Civ.App.—Galveston 1951, writ ref'd), to mean that the residential lots of the Southampton Place Addition were "restricted to the exclusive use of a residence of a single family." *Id.* at 144. Summary judgment evidence showed that appellant Carol Finkelstein rented out the two-story wooden frame building to two young women not related to her or to each other, a clear violation of the prohibition against multiple family housing. Absent a valid partition of the original lot, rental of either building to a tenant violates the multiple housing prohi-

bition so long as the other building is occupied by a family. Appellants have, in effect, sought to nullify the restriction's prohibition against multiple housing by simply creating multiple lots, while ignoring the limitations on partition imposed by the two earlier discussed restrictions. Such an attempted resubdivision constitutes an invalid infringement on the restriction's prohibition against multiple housing. Appellant's second and third points of error are overruled.

■ Appellant's fourth point of error urges that summary judgment was wrongly granted inasmuch as the affidavits by J.J. Finkelstein and Lucile Brown, both offered in opposition to summary judgment, raised fact issues regarding appellants' defensive issues of waiver and estoppel. Accepting as true the content of such affidavit statements, the relevant inquiry is whether the non-movants asserting an affirmative defense have raised a fact issue upon each element of that defense by evidence which would be admissible upon the trial of the case. *Gulf, Colorado & Santa Fe Railway Co. v. McBride*, 159 Tex. 442, 322 S.W.2d 492 (1959).

■ Waiver is the voluntary relinquishment of a known right. *Farmer v. Thompson*, 289 S.W.2d 351, 356 (Tex.Civ. App.—Fort Worth 1956, writ ref'd n.r.e.). To establish waiver in a deed restrictions case, the nonconforming user must prove that violations then existing are so great as to lead the mind of the "average man" to reasonably conclude that the restriction in question has been abandoned and its enforcement waived. *New Jerusalem Baptist Church, Inc. v. City of Houston*, 598 S.W.2d 666, 669 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). Among the factors to be considered by the "average man" are the number, nature, and severity of the then existing violations, any prior acts of enforcement of the restriction, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. *Id.*

The affidavit of appellant J.J. Finkelstein identifies the location of two other residences in Southampton Place in violation of the corner lot fronting restriction, one of which belongs to a plaintiff in the case. The affidavit of Lucile Brown, previous owner of the original lot, states that since her purchase of the subject property in 1959, the two residential structures situated on it have had separate addresses; that she lived at 2102 Albans (the frame building) and rented 2104 Albans (the brick building) to tenants from 1966 through 1968; that at least one other owner in the addition was aware the house was being rented, and that no action was taken against her by the association or any neighbor to force her to cease renting 2104 Albans.

■ Affiant Brown's prior rental of one residence while living in the other does not show a present intent to abandon the multiple-family use restriction; the applicability of the covenant is renewed once the violation of it ceases. *New Jerusalem Baptist Church, supra,* at 669.

■ Appellant Finkelstein's affidavit proof of two fronting violations reflects, at best, isolated instances of breach of the restriction. We hold that they are insufficient as a matter of law in number, nature, or severity to constitute waiver of the restrictive covenant's benefits and enforceability. No evidence was offered to show waiver of the restriction requiring reservation of the rear easement in deeds.

■ Estoppel, as here applicable, has been defined in *Farmer v. Thompson*, 289 S.W.2d 351 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.) as follows:

the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

289 S.W.2d at 356. Appellants' affidavits makes no claim of reliance to their detriment upon the conduct of others as precedent for their actions. Finding no genuine issue of fact raised as to the defenses of waiver or estoppel, we overrule appellants' fourth point of error.

■ Appellants urge in their fifth point of error that the court abused its discretion by granting plaintiffs' motion for summary judgment without allowing appellants the opportunity to complete discovery. The record shows that the suit had been on file for over two years, that extensive discovery had been undertaken by both parties before the summary judgment was entered, and that appellants failed to request any extension of time within which to file a response to plaintiffs' motion. *See Rylee v. McMorrough*, 616 S.W.2d 649, 653 (Tex. Civ.App.—Houston [14th Dist.] 1981, writ dism'd.). The case cited by appellants, *National Surety Corp. v. Rushing*, 628 S.W.2d 90 (Tex.Civ.App.—Beaumont 1981, no writ), concerns the court's discretion in permitting a witness to testify although his identity was not disclosed in answers to interrogatories; it is not supportive of appellants' argument. No abuse of discretion is shown. Point of error five is overruled.

■ In their final point of error, appellants complain of the trial court's award of the attorney's fees shown in the final judgment urging that such fees are not allowable until plaintiffs "have proved their cause of action." The amount of attorney's fees was determined at a hearing held for that purpose following the granting of summary judgment. Art. 1293b, *supra*, provides for reasonable attorney's fees for prevailing parties "who asserted the action for breach of a restrictive covenant." Our rulings on earlier points, concluding that the trial court correctly found breaches of the restrictive covenants as alleged, are dispositive of this contention. Appellants' sixth point of error is overruled.

The judgment is affirmed.

EVANS, C.J., concurs.

EVANS, C.J., concurring.

I generally agree with the majority that, under the facts of the case, the proposed use of the lot in question violates the three quoted restrictive covenants. However, I believe the judgment should be affirmed and modified solely on the basis that the restriction against multiple housing precludes the use of any residential lot, as *originally* platted, for more than one single-family residence.

The restriction prohibiting multiple housing is the identical covenant construed by this court in *Pardo v. Southampton Civic Club*, 239 S.W.2d 141, 144 (Tex.Civ.App.—Galveston 1951, writ ref'd). In that case this court held that the covenant restricted every residential lot in the addition "to the exclusive use of a residence of a single family."

In *Fischer v. Reissig*, 143 S.W.2d 130 (Tex.Civ.App.—Austin 1940, writ ref'd), a similar fact situation was presented. There, two residences were constructed on a single lot, and the trial court granted a mandatory injunction to require the removal of one of them. On appeal, the defendants contended that the construction of the second house did not violate the restrictions because there was no express prohibition against the erection of more than one dwelling house on a single lot. There, the restriction required that "the dwelling house, as distinguished from outhouses and servant's quarters, shall face the street upon which the lots front ...," and the appellate court decided that since the covenant referred to "dwelling house" in the singular, the subdivider's clear intent was to allow only one dwelling house on each lot. In reaching its decision the court recognized that the restrictions did not expressly prohibit multiple dwelling houses on a single lot, and that the restrictions should be given that construction which favored the free and unrestricted use of the property.

A similar situation was presented in *MacDonald v. Painter*, 441 S.W.2d 179 (Tex. 1969), but the court in that case reached a

different result. There, the restrictive covenant provided that:

3. All improvements to be erected on said premises shall be built for residence purposes, or for use in connection with residences; and the main residence so erected thereon shall front on John D. McCall Road; the front building line of the land hereby conveyed shall be not less than 30 feet from the property line of said premises, fronting on John D. McCall Road; and no residence, or any part thereof, and no outbuildings of any kind, shall ever be erected or placed upon the space between said building line and said property line.

On the basis of this provision, a group of lot owners sought an injunction to prevent the resubdivision of certain lots and the erection of multiple duplexes on such lots. The trial court denied injunctive relief, but the Court of Civil Appeals reversed, holding that injunctive relief was appropriate. The Texas Supreme Court reversed the decision of the appellate court, ruling that the restrictions did not preclude such resubdivision and use. The court, speaking through Justice Pope, distinguished the holding of the Austin Court of Appeals in *Fischer v. Reissig, supra,* explaining that in the *Fischer* case the restrictions demonstrated the subdivider's intent to prohibit more than one single residence on each original lot. The court pointed out that in the case then before it, the restrictions used the plural term "residences," when referring to the improvements which could be erected on the lots, so that it could not be said that the restrictions prohibited the erection of multiple housing on a single lot. The court also discussed and distinguished several other cases which prohibited multiple housing on single lots. *Green v. Gerner,* 283 S.W. 615, *aff'd,* 289 S.W. 999 (Tex.Com. App.1927); *White v. Hansen,* 36 S.W.2d 456 (Tex.Com.App.1931).

The Southampton Place restrictions do not expressly prohibit resubdivision of the platted lots and, as the majority opinion states, such a prohibition cannot be inferred merely from the filing of the subdivision plat. *MacDonald v. Painter, supra.* Therefore, the owner of a lot may partition the *ownership* of the lot in such manner as he might wish. However, the restrictions do expressly prohibit the *use* of the original platted lots for "multiple housing", and, in my opinion, the proposed use of the subject lot for multiple residential housing would clearly nullify the intent of the subdivider. In this respect, I feel this court is bound to follow the decision of the Austin Court of Appeals in *Fischer v. Reissig, supra,* in which writ of error was refused by the Texas Supreme Court.

The summary judgment proof shows, as a matter of law, that the defendants' proposed *use* of the lot in question violates the covenant prohibiting multiple housing because each residential lot in the subdivision, as originally platted, is restricted to one single-family residence.

I would modify the judgment to delete the provisions prohibiting partition of ownership and would affirm the judgment prohibiting the use of the lot for more than one single-family residence.