ACCEPTED
01-14-00447-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/23/2015 12:34:57 AM
CHRISTOPHER PRINE
CLERK

# No. 01-14-00447-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

9/23/2015 12:34:57 AM

CHRISTOPHER A. PRINE
Clerk

### IN THE FIRST COURT OF APPEALS, HOUSTON, TEXAS

**ELBAR INVESTMENTS, INC.,**
*Appellant*
v.
**GARDEN OAKS MAINTENANCE ORGANIZATION,**
*Appellee*

On Appeal from Cause No. **2011-67560**
269th District Court, Harris County, Texas
Honorable Dan Hinde, Presiding Judge

### BRIEF OF APPELLANT ELBAR INVESTMENTS, INC.

JEREL S. TWYMAN
`      SBN              00788564
P.O. Box 272271
Houston, Texas 77277-2271
Telephone: (713) 664-0770
Facsimile: (713) 664-4289
E-mail: twymanlegal@sbcglobal.net

Oral Argument Not Requested

i

## IDENTITY OF PARTIES AND THEIR COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.1(a), the following is a list of parties to the Final Judgment signed on May 2, 2014, which is being appealed, and the names and addresses of trial and appellate counsel for those parties.

| | |
|---|---|
| Trial Judge | Honorable Dan Hinde<br>269TH District Court, Harris County, Texas |
| Defendant/Appellant | Elbar Investments, Inc. |
| Defendant/Trial and<br>Appellate Counsel | Jerel S. Twyman<br>Attorney at Law<br>PO Box 272271<br>Houston TX 77277-2271<br>Ph: (713) 664-0770<br>Fax: (713) 664-4289<br>E-mail: twymanlegal@sbcglobal.net |
| Plaintiff/Appellee | Garden Oaks Maintenance Organization |
| Plaintiff/Trial and<br>Appellate Counsel | W. Austin Barsalou<br>Barsalou & Associates, P.L.L.C.<br>4624 Southwest Freeway, Suite 580<br>Houston TX 77027<br>Ph: (713) 652-5044<br>Fax: (713) 650-8745<br>E-mail: abarsalou@barsalou.com |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ i

INDEX OF AUTHORITIES ....................................................................... iii

STATEMENT OF THE CASE ........................................................................1

STATEMENT REGARDING ORAL ARGUMENT................................................3

ISSUES PRESENTED ............................................................................. 3

STATEMENT OF FACTS ....................................................................... 4

STANDARD OF REVIEW ....................................................................... 7

SUMMARY OF THE ARGUMENT ..................................................... 8

ARGUMENT AND AUTHORITIES................................................................10

*Issue 1:*     *The trial court erred by entering judgment for GOMO and against Elbar despite finding that "Elbar has not erected any improvements on Elbar's Property since acquiring it in 2010" and without any evidence of any separate use violation*........10

*Issue 2:*     *The trial court erred by ordering Elbar to "rejoin" property by either selling property that Elbar owned or to buy property that Elbar did not own, and by prohibiting Elbar from "selling in a manner inconsistent with this Judgment or re-renting the West Half of Lot 15 until the properties are recombined*..................................................................................14

CONCLUSION................................................................................17

PRAYER................................................................................18

CERTIFICATE OF SERVICE................................................................19

# INDEX OF AUTHORITIES

CASES                                                                  PAGE(S)

*Bowie Mem'l Hosp. v. Wright,*
79 S.W.3d 48, 52 (Tex. 2002) ................................................................. 8, 14

*City of Keller v. Wilson,*
168 S.W.3d 802, 810 (Tex. 2005) ......................................................... 7, 8, 15

*Croucher v. Croucher,*
660 S.W.2d 55, 58 (Tex. 2004) ................................................................... 7

*Finkelstein v. Southampton Civic Club,*
675 S.W.2d 271 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e) ........ 10-13

*Latch v. Gratty, Inc.,*
107 S.W.3d 543, 546 (Tex. 2003) .............................................................. 15

*Olympia Marble & Granite v. Mayes,*
17 S.W.3d 437, 440 (Tex.App—Houston [1st Dist.] 2000, no pet.) ...................15

*State v. Heal,*
917 S.W.2d 6, 9 (Tex.1996) ..................................................................... 10

*Stewart v. USA Custom Paint & Body Shop, Inc.,*
870 S.W.2d 18, 20 (Tex. 1994) ................................................................. 15

STATUTES AND RULES

Tex. R. App. P. 9.4(i)(2)(C) ....................................................................... 8

Tex. R. Civ. P. 266............................................................................... 19

# STATEMENT OF THE CASE

This is an appeal from the trial court's Final Judgment and Permanent Injunction awarding relief in favor of Garden Oaks Maintenance Organization ("GOMO") and against Elbar Investments, Inc. ("Elbar"). GOMO alleged that Elbar "violated the Declaration by failing to adhere to minimum frontage requirement of 75 feet on the Property" and "This violation of the deed restrictions detracts from the appearance of the Subdivision, and lowers property values in the Subdivision." (CR: 3-6). Elbar filed its general denial and asserted the following affirmative defenses: i) that the detriment to Elbar caused by compliance outweighs the benefit to the subdivision, ii) that the Subdivision is not damaged by any failure of Elbar to adhere to minimum frontage requirement, iii) that GOMO failed to provide Elbar the opportunity to exercise its right to meet with either a committee or the Board to discuss the alleged violation prior to filing suit, and iv) that GOMO's claims were barred by res judicata, estoppel and waiver. (CR: 7-9).

The trial court proceeded to hear the matter on June 24, 2013 without a jury, and the Court signed its Findings of Fact and Conclusions of Law on that same date. (CR: 10-13). In its Findings of Fact, the trial court found that "Elbar has not erected any improvements on Elbar's Property since acquiring it in 2010." (CR: 11). There was no evidence that Elbar violated any other deed restriction and the

1

trial court did not find that Elbar violated any other deed restriction. Entire Record.[1]

The trial court concluded that the "subdivision" [of ownership] of 523 West 30th St. into the West One-Half of Lot Fifteen, Block 11 of GARDEN OAKS (the "West One-Half of Lot 15") and the East One-Half of Lot Fifteen, Block 11 of GARDEN OAKS (the "East One-Half of Lot 15") by lenders' foreclosures on their prospective interest in the lot "caused Elbar's property to have less than seventy-five (75) feet of frontage," and as a result "Elbar's property is in violation of the Garden Oaks Deed Restrictions." (CR: 12, nos. 7 and 8). The owner of the East One-Half of Lot 15 has never been a named party to this lawsuit. (CR: 3-6; RR 2:35-36).

The trial court also initially concluded that:

[t]he Court lacks sufficient briefing or argument at this time to determine whether Garden Oaks has established a right to the injunction that it seeks. Garden Oaks may file a post-trial motion requesting the entry of an injunction. Such motion must state in particular the precise language of the injunction that Garden Oaks seeks and authority that the Court can enter such an injunction. Both parties should address whether the injunction sought is capable of being enforced or otherwise administered." (CR: 13, no. 18).

GOMO filed a post-trial Motion Requesting Special Hearing Date, Requesting Hearing on Defendant's Motion to Enter Judgment, and Re-Requesting

---

[1] Because Elbar is arguing there is no evidence to support the allegations asserted by GOMO, this citation refers to the absence of any evidence anywhere within the "Entire Record."

Entry of a Permanent Injunction as well as a proposed Permanent Injunction. (CR: 19-23). Although Elbar believed that GOMO failed to prove its case, Elbar proposed a Final Judgment with language that tracked the language of the Deed Restrictions verbatim. (CR: 14-18).

On May 2, 2014, the trial court signed a Final Judgment and Permanent Injunction that required Elbar to either sell the West One-Half of Lot 15, which Elbar owned, or to buy the East One-Half of Lot Fifteen, which Elbar did not own. (CR: 24-25). The Permanent Injunction also prohibited Elbar from "selling in a manner inconsistent with this Judgment" or re-renting the "West One-Half of Lot 15 "until the properties are recombined." (CR: 24-25).

## STATEMENT REGARDING ORAL ARGUMENT

The issues in this appeal may be resolved by the application of Texas law without the necessity of oral argument and Appellant does not request oral argument.

## ISSUES PRESENTED

1. The only Deed Restriction Elbar is accused of violating states as follows: "No residence shall be erected on a lot or homesite of less frontage than seventy-five (75) feet." After the bench trial, the trial court found that "Elbar has not erected any improvements on Elbar's Property since acquiring it in 2010."

*Did the trial court err by entering judgment for GOMO and against Elbar despite finding that Elbar has not erected any improvements on Elbar's Property since acquiring it in 2010, and without any evidence of any separate use violation?*

2. Nevertheless, the trial court entered judgment for GOMO and against Elbar, and it signed its Final Judgment for GOMO granting a permanent injunction that orders:

> Elbar to use all commercially reasonable efforts to rejoin the west one-half of 523 W 30th Street, Houston, Texas 77018 (owned by Elbar) with the east one-half of 523 W. 30th Street, Houston, Texas 77018 (not owned by Elbar), including the following:
>
> a. Unless Elbar claims and can demonstrate that it cannot afford to do so, purchase the East Half of Lot 15 and notify the Harris County Appraisal District that the two properties should be listed as one lot; or
>
> b. Sell the West Half of Lot 15 for the appraised value of the half lot to a third party who contracts with both [Elbar] and [GOMO] to recombine both halves of Lot 15.

The permanent injunction also stated that Elbar

> is ordered to refrain from selling in a manner inconsistent with this Judgment or re-renting the West Half of Lot 15 until the properties are recombined.

> *Did the trial court err or abuse its discretion by its mandatory injunction ordering Elbar to "rejoin the West one-half of 523 W. 30th Street, Houston, Texas 77018 ('the West Half of Lot 15') with the east one-half of 523 W. 30th Street, Houston, Texas 77018 ('the East Half of Lot 15')?"*

## STATEMENT OF FACTS

Mr. Tim Weltin, president of GOMO – who was the only witness for

GOMO to testify about the alleged violation – testified that GOMO's "only function, our primary function as a maintenance organization, is to enforce the deed restrictions to make sure that the integrity and the look, the appearance, the overall structure of the neighborhood is maintained." (RR 2:14; 2:17). Mr. Weltin stated that the "restriction requires 75-foot frontage when you are building – for the residential lot." (RR 2:15; P. Ex. 1, at p. "115," lines 35-6).

As far as the actual improvement is concerned, Mr. Weltin testified that the improvement on the Lot 15 was built on a lot with 75 feet of frontage. (RR 2:31). He also testified that he has no personal knowledge about how the building today differs from how it existed in 1979. (RR 2:30; 36-39). The subject building is a side-by-side duplex on Lot 15, Block 11 of GARDEN OAKS; it is one building with a common interior wall running right down the middle of the building between the two sides. (RR 2:36-37; 49). Mr. Vincent Bustamante – Vice President of Elbar – stated very clearly that "It's just one building sitting in the middle of 75 feet." (RR 2:50-51). Mr. Bustamante also testified that if you look at the building from the street, it does not detract from the neighborhood; it fits in with the neighborhood; and there are other structures similar to it. (RR 2:50). There is no evidence that Elbar erected any residence, or that the structure detracts from the appearance of the Subdivision, and lowers property values in the Subdivision. (Entire Record).

On December 7, 2010, Elbar purchased the West One-Half of Lot Fifteen, Block 11 of GARDEN OAKS (the "West One-Half of Lot 15") at public foreclosure.[2] (P. Ex. 2; D. Ex. 7; RR 2:35; 2:48). At the time of trial, the East One-Half of Lot 15 was owned by a bank that purchased it at a separate public foreclosure. (RR 2:36). Prior to purchasing the West One-Half of Lot 15 on December 7, 2010, Elbar had never previously owned the West One-Half of Lot 15, and Elbar has never owned the East One-Half of Lot 15 of Block 11 GARDEN OAKS (the "East One-Half of Lot 15"). (RR 2:48; 50). Elbar never erected any structure on the West One-Half of Lot 15. (RR 2:48). Other than paint, Elbar never made any changes to the existing structure. (RR 2:49). At the time of trial, Elbar was in possession of the "west half of that one building, and Elbar [was] renting it." (RR 2:49). The owner of the East One-Half of Lot 15 never erected anything or made any changes to the existing structure. (RR 2:49-50).

Mr. Weltin testified that the word "erect" means that "something is actually physically constructed." (RR 2:30). He clarified, however, that the association is not alleging that Elbar built the duplex."[3] (RR 2:30). GOMO is asserting that the act of dividing the ownership amounts to a violation of the restriction against erecting a residence on a lot with less than 75 feet of frontage. (RR 2:16; 30; 34-

---

[2] Again, it is important to note that the owner of the East One-Half of Lot 15 was never a party to this lawsuit.

[3] Despite the fact that only allegation in Plaintiff's Petition is that Elbar violated "the Declaration by failing to adhere to minimum frontage requirement of 75 feet on the Property," (CR: 3-6), and that the only Deed Restriction Elbar is accused of violating states "[n]o residence shall be erected on a lot or homesite of less frontage than seventy-five (75) feet." (P. Ex. 1, at p. "115," lines 35-6).

6

35; 38). When pressed on when and how GOMO became aware of any perceived violation, he danced around the issue, but he finally stated that "I think we had knowledge that it was at one point owned by one person or one entity or one, you know, group. I don't think it's been owned by two different people who have separate ownership interests. That was our understanding." (RR 2:34). Mr. Weltin continued by stating that "I'd have to look back at documents to refresh my memory. I really don't – other than it being discussed at a board meeting and other than us deciding that it was appropriate for us to interact with our attorney, I don't have a – a specific memory." (RR 2:34).

Elbar now asks this Court to reverse the trial court's judgment because there is no evidence that supports either any finding of a violation, or any finding of any damages to GOMO. Additionally, the trial court abused its discretion by entering the permanent injunction.

## STANDARD OF REVIEW

The no-evidence standard is used to evaluate the evidence supporting a jury's or trial court's determination of an issue on which the appellant did not have the burden of proof at trial. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 2004). The appellate court will sustain a no-evidence complaint if the record shows one of the following: (1) there is no evidence supporting the challenged element, (2) the evidence offered to prove the challenged element is no more than a

7

scintilla, (3) the evidence establishes the opposite of the challenged element, or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

A trial court abuses its discretion if it acts arbitrarily and unreasonably or without any reference to any guiding rules and principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

## SUMMARY OF THE ARGUMENT

This Court should reverse the judgment below.

It was alleged by GOMO that Elbar violated the terms of deed restrictions that stated "No residences shall be erected on a lot or homestead of less frontage than 75 feet." (CR: 3-6). As the Plaintiff, GOMO had the burden of proof to show that a residence was erected on less frontage than 75 feet in violation of that deed restriction, and that it detracts from the appearance of the subdivision, and lowers property values in the subdivision as alleged. Tex. R. Civ. P. 266. All the evidence establishes that at the time the residence on Lot 15 was erected on Lot 15, that there was no less frontage than 75 feet. (RR 2:29-30). There is no evidence to show that Elbar, or its predecessors in interest, erected a residence on a lot of less frontage than 75 feet in violation of any a deed restriction. (Entire Record). There is no evidence that the existing improvements on all of Lot 15 violated the

8

deed restriction, and there is no evidence that any new improvements were going to be erected on any portion of Lot 15. (Entire Record). The subject property was built in 1979 in compliance with the restriction, yet GOMO has filed suit against Elbar – who erected nothing – 31 years after the building was erected. (CR: 3-6).

There is evidence that separate foreclosure sales had the effect of dividing the ownership of Lot 15 into the West One-Half of Lot 15 and the East One-Half of Lot 15. (P. Ex. 2; D. Ex. 7; RR 2:35-36; 2:48-50). The evidence clearly established that, despite the division of the property ownership into the West One-Half of Lot 15 and the East One-Half of Lot 15, there was no change in the uniform appearance of the neighborhood and there were no lowered property values. (RR 2:38-39; 2:50; 2:55).

The restriction was designed to maintain a uniform appearance when residences are erected. (RR 2:17). There is no evidence that it was designed to prevent splitting ownership of any lot within the neighborhood. (Entire Record). The simple fact that the West One-Half of Lot 15 has one owner and the East One-Half of Lot 15 has a different owner, with no evidence that any new improvements have been or will be erected on less than 75 feet of frontage, is not evidence of a violation of any restriction and it is not evidence of any damages. (Entire Record).

Despite the lack of any evidence that Elbar violated any deed restriction, and despite the overwhelming evidence that: i) the building was erected in compliance

with the restriction, ii) that the subject property looks the same was it did when it was erected, and iii) that the structure does not detract from the neighborhood, the trial court entered Judgment for GOMO, and the trial court abused its discretion by arbitrarily, unreasonably, and without any reference to any guiding rules and principles, ordering Elbar to either sell its ownership interest in the West One-Half of Lot 15 or buy the East One-Half of Lot 15, which it does not own, and depriving Elbar of the right to re-rent its property until it complies with its abusive order. (CR: 24-25).

## ARGUMENT AND AUTHORITIES

Legal conclusions of the trial court are not binding on an appellate court; appellate courts review questions of law de novo. *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996). In its conclusions, it appears that the trial court relied solely on a misinterpretation of this Court's 1984 decision in *Finkelstein v. Southampton Civic Club*, 675 S.W.2d 271 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e). Despite its initial hesitation to grant the permanent injunction suggested by GOMO, the trial court, arbitrarily, unreasonably and without reference to any guiding rules and principles, awarded the relief requested by GOMO.

1. **The trial court erred by entering judgment for GOMO and against Elbar despite finding that "Elbar has not erected any improvements on Elbar's Property since acquiring it in 2010" and without any evidence of any separate use violation.**

10

GOMO sued Elbar alleging that Elbar violated the restriction that read "No residences shall be erected on a lot or homestead of less frontage than 75 feet." (CR: 3-6). As the Plaintiff, GOMO had the burden of proof to show that a residence was erected on less frontage than 75 feet in violation of that deed restriction, and that it detracts from the appearance of the subdivision, and lowers property values in the subdivision as alleged. Tex. R. Civ. P. 266. Despite finding that Elbar has not erected any improvements, the trial court awarded judgment for GOMO and against Elbar and granted a permanent injunction. (CR: 11, 24-25).

In the *Finkelstein* case, this Court affirmed the trial court's decision that subdividing a lot did have the effect of violating restrictions, and it affirmed the trial court's judgment enforcing the deed restrictions. *Id. at* 279. In its decision, this Court did "recognize that the Southampton Place restrictions do not expressly prohibit resubdivision of the lots, and that such a covenant is not implied from the mere making and filing of a plat showing the different lots and selling lots in conformity with such plat." *Id. at* 275. This Court explained that neither plaintiffs' motion for summary judgment [alleging a violation of Southampton Place restrictions] nor the judgment entered [granting the summary judgment] are based on the premise that the act of resubdividing a lot in Southampton Place is, *per se*, a violation of a restrictive covenant. *Id. at* 275. Similarly, in this case, there is no allegation that any restriction prohibits resubdivision of the lot. (Entire Record).

11

In *Finkelstein*, this Court was very careful to note that that the manner of division of the lot ["in an east-west fashion instead of the more natural north-south direction"] **had the effect of violating certain provisions of the deed restrictions**, and that the judgment appealed from found that the subdivision of the original lot into two separate lots "resulted in violations" of the **three specific deed restrictions**.[4]  *Id. at* 275 (emphasis added).  The record on appeal in the *Finkelstein* case included a survey plat showing the relative location of the buildings and the subdivided portions of the lot, and this Court reproduced the survey plat in its decision.  *Id. at* 274.  This Court took great care to discuss the facts to show how subdivision of the lot changed the way the property was being used and how that use violated the three specifically mentioned restrictions, and that is why this Court affirmed the trial court.  *Id. at* 273-278.

How then is this case different from the *Finkelstein* case?  The trial Court's application of this Court's decision in *Finkelstein* that "property that is initially in compliance with deed restrictions can nevertheless fall into noncompliance by the

---

[4] The first of the three covenants that the trial court in the *Finkelstein* case found the defendants to have violated states:

> Any and all buildings that may be constructed upon corner lots shall front upon the proper street and not on a side street and shall have its [sic] main entrance on the proper front street. (Emphasis added).  *Id. at* 276.

The second of the covenants in question that this Court examined states:

> Each and every deed or other instrument which may vest in any person or corporation any title or interest in any lot, lots, or other property in said project or addition, shall expressly reserve to the trustee and its successors a right of easement and the right of ingress or egress to a strip of land three (3) feet in width over, along and across the extreme rear end of each and all such lots and tracts.  *Id. at* 277.

The third covenant found to have been violated reads:

> No apartment house or duplex will be permitted in the addition; the object of this provision being to prohibit multiple housing throughout the entire addition.  *Id. at* 277.

12

act of subdividing the lot, even if the deed restrictions do not explicitly prohibit subdividing lots" ignores the requirement that there has to be some **separate use violation**. (CR: 12, no. 3). In this case, there is no allegation by GOMO of any separate restriction violations, and there is no evidence that splitting the ownership resulted in any violation of any other restriction or changed how the property was used. Entire Record. Without any evidence, the trial court in this case concluded that "under this Deed Restriction, a property owner may not build a residence on lots that are less than 75 feet wide, as measured at the front line of the lot facing the street." (CR: 12, no. 5). Therefore, "the subdivision of the lot that occurred when the lenders foreclosed on their prospective portions of the lot caused Elbar's Property to have less than seventy-five (75) feet of frontage." (CR: 12, no. 7); and "as a result, Elbar's Property is in violation of the Garden Oaks Deed Restrictions." (CR: 12, no. 8). All of this was done without any evidence of any separate use violations. (Entire Record). The trial court effectively concludes that resubdividing a lot is a *per se* violation. If Lot 15 had been a vacant lot with no improvements, would the division of ownership into the West One-Half of Lot 15 and the East One-Half of Lot 15 violate the restriction and authorize a Court to order the two parts recombined as the trial court did in this case? No. The trial court would have likely waited for a live controversy that involved an actual

13

attempt to erect improvements in violation of the frontage requirement before granting a permanent injunction.

There is no evidence to support the trial court's conclusion, and this Court should reverse the trial court's judgment.

**2. The trial court erred by ordering Elbar to "rejoin" property by either selling property that Elbar owned or to buy property that Elbar did not own, and by prohibiting Elbar from "selling in a manner inconsistent with this Judgment or re-renting the West Half of Lot 15 until the properties are recombined.**

Despite there being no evidence that Elbar violated any deed restriction, or that dividing the ownership of Lot 15 into the West One-Half of Lot 15 and the East One-Half of Lot 15 was a violation *per se* of the deed restrictions or changed the use of the property, the trial court entered Judgment for GOMO, and the trial court abused its discretion by arbitrarily, unreasonably, and without any reference to any guiding rules and principles, by ordering Elbar to either sell its ownership interest in the West One-Half of Lot 15, which it owns, or to buy the East One-Half of Lot 15, which it does not own, and by prohibiting Elbar from "selling in a manner inconsistent with the Judgment or re-renting [Elbar's property] until the properties are recombined."

A trial court abuses its discretion if it acts arbitrarily and unreasonably or without any reference to any guiding rules and principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A judgment must be sufficiently definite

14

and certain to define and protect the rights of the litigants. *Stewart v. USA Custom Paint & Body Shop, Inc.* 870 S.W.2d 18, 20 (Tex. 1994). If a judgment is not definite, it must provide a means of determining rights so the ministerial officers can execute on the judgment. *Id.; Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437, 440 (Tex.App—Houston [1st Dist.] 2000, no pet.). The judgment must conform to the pleadings and proof. *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003). The appellate court will sustain a no-evidence complaint if the record shows that there is no evidence supporting the challenged element. *City of Keller*, 168 S.W.3d at 810.

The trial court's initial hesitation in granting the permanent injunction was well founded. (CR: 13, no. 18). The hesitation was well founded because: i) there was no violation in the use of the property, ii) there was no damage to GOMO, iii) the terms of the permanent injunction are not sufficiently definite, nor do they provide a means of determining rights so the ministerial officers can execute on the judgment, and iv) the permanent injunction does not conform to the pleadings and proof.

Despite there being no violation in use of the property by Elbar or damage to GOMO, the trial court's judgment causes significant damage to Elbar. The owner of the east One-Half of Lot 15 was not even a party to this lawsuit, and yet the trial court's order that Elbar buy the East One-Half of Lot 15 ignores the very likely

15

possibility that the owner of the East One-Half of Lot 15 might refuse to sell or at least charge an exorbitant price to Elbar. Perhaps this is why the trial court requested briefs, and also why Elbar could find no existing Texas case where a mandatory injunction has been issued requiring a private land owner to purchase property from a different private land owner who is not a party to the lawsuit. Similarly, if Elbar is forced to sell its property under threat of contempt, the price is likely to be reduced significantly causing great harm to Elbar. The record is devoid of any evidence regarding what "commercially reasonable efforts" are, or how GOMO proposes to require the owner of the East-Half of Lot 15 to go along with the trial court's order requiring Elbar to "recombine the two halves." (Entire Record).

There is no evidence regarding how Elbar's renting the West One-Half of Lot 15 to a tenant is a violation of any restriction, (Entire Record). The prohibition against re-renting the property in the future is not supported by any evidence, and it is excessive and punitive.

The trial court's Final Judgment and Permanent Injunction is: (i) not supported by any evidence; (ii) not sufficiently definite and certain; (iii) arbitrary, unreasonable and without reference to any guiding rules and principles. The trial court's judgment is an abuse of discretion.

## CONCLUSION

If GOMO wanted to make subdividing ownership of a lot a *per se* violation, it could easily have stated that in the recorded deed restrictions. That would have been very simple to do. But GOMO did not do that.

The recorded deed restrictions put Elbar and the rest of the world on notice that "[n]o residence shall be erected on a lot or homesite of less frontage than seventy-five (75) feet." Elbar has erected nothing and the same improvements have been on the property since being erected in 1979. Elbar simply purchased the West One-Half of Lot 15 at public foreclosure sale, and a bank purchased the East One-Half of Lot 15 at a separate public foreclosure sale. No changes have been made to the property, other than paint, and the property continues to be used in the same manner that it has always been used. The property does not detract from the appearance of the subdivision, and no property values in the subdivision have been lowered as a result of Elbar's purchase. Dividing the ownership of a lot is not the same thing as "erecting" a residence.

Yet, the trial court has required that Elbar sell property it owns or to buy property that it does not own, and be prevented from re-renting its own property. There is no evidence to support the trial court's judgment, and the trial court abused its discretion by awarding the permanent injunction.

17

## PRAYER

WHEREFORE, Appellee respectfully requests that this court reverse the trial court's decision and render by adopting the Final Judgment proposed by Elbar (CR. 17 & 18) and for such other and further relief as this court may deem just and proper.

Respectfully submitted,

*/s/ Jerel S. Twyman*

Jerel S. Twyman, SBN 00788564
P.O. Box 272271
Houston, Texas 77277-2271
Ph: (713) 664-0770
Fax: (713) 664-4289
E-mail: twymanlegal@sbcglobal.net
**Attorney for Elbar Investments, Inc.**

## CERTIFICATE OF WORD COUNT

Pursuant to Tex. R. App. P. 9.4(i)(2)(C), the below attorney certifies that this reply brief contains 5,146 words, as counted by the word processing program Microsoft Word 2010.

*/s/ Jerel S. Twyman*

Jerel S. Twyman

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served pursuant to the Rules of Appellate Procedure upon all parties entitled to notice including:

W. Austin Barsalou
Barsalou & Associates, P.L.L.C.
4624 Southwest Freeway, Suite 580
Houston TX 77027

*/s/ Jerel S. Twyman*
Jerel S. Twyman