Grady H. WOODS and Monroe Woods, Appellants,

v.

Mary Elizabeth WOODS, Appellee.

No. 09–05–00282-CV.

Court of Appeals of Texas, Beaumont.

Submitted March 9, 2006.

Decided May 18, 2006.

Scott W. Stover, Seale, Stover & Bisbey, Jasper, for appellants.

Kevin Dutton, Jasper, for appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

**OPINION**

DAVID GAULTNEY, Justice.

Grady H. Woods and Monroe Woods sued Mary Woods[1] for conversion of personal property, and they sought partition of real property. *See* Tex. Prop.Code Ann. §§ 23.001–.006 (Vernon 2000 and Supp. 2005); Tex.R. Civ. P. 756–771, 776. Grady and Monroe appeal the trial court's judgment which adopted a commissioners' report concerning the partition of the real property and denied their conversion claim. We affirm the judgment.

THE TRIAL COURT PROCEEDINGS

The trial court signed an order setting out the interests of each party in the real property and ordering its partition. *See* Tex.R. Civ. P. 760, 761. The order appointed commissioners to effect the partition. *See* Tex.R. Civ. P. 761, 762. On April 30, 2002, the commissioners filed their recommendation for the property's partition. *See* Tex.R. Civ. P. 769. The

---

1. Grady and Monroe are half brothers. Mary is Monroe's mother.

deadline for objecting to the commissioners' report was May 30, 2002. See Tex.R. Civ. P. 771 (thirty days to file objections). Appellants filed their objections on July 15, 2002. The trial judge sent the parties a letter stating that "[i]n [his] opinion, when objections were not filed in the 30 days, the parties are deemed to have accepted the Report." We do not find in the clerk's record any motion by Grady or Monroe explaining the late filing. On May 12, 2003, the trial court signed a judgment adopting the commissioners' report. However, the judgment did not dispose of the conversion claim.

Three months later, the trial judge held a hearing to reconsider. Appellants' attorney for the first time explained why he did not object timely to the commissioners' report. He was unaware there was a time limit for objections; one client was working out of town in the oil field; and one client did not have a telephone. Monroe testified he thought the commissioners' report should not be accepted because he had invested a significant amount of labor and money in improving the house on one of the tracts, and he felt that tract should go to him.

Grady agreed with Monroe's suggested division. Nevertheless, the trial court did not vacate the judgment. Grady and Monroe appealed. This Court dismissed the appeal because the 2003 judgment was not final without a disposition of appellants' conversion claim. See Woods v. Woods, No. 09–03–400 CV, 2004 WL 918785, 2004 Tex.App. Lexis 3942 (Tex.App.-Beaumont April 29, 2004, no pet.). The parties then litigated the conversion action, and this appeal followed.[2]

## The Real Estate

Appellants contend the trial court erred in accepting the commissioners' report.

Mary argues appellants waived any error concerning the report because they did not file objections timely. Rule 771 provides that objections may be filed within thirty days of the date the report is filed. If objections are filed, "a trial of the issues thereon shall be had as in other cases." Tex.R. Civ. P. 771.

Appellee relies on *Grimes v. Hall*, 211 S.W.2d 956 (Tex.Civ.App.-Eastland 1948, no writ). Grimes predates the 1990 amendment to Rule 771 which added the thirty-day time limitation. Tex.R. Civ. P. 771 hist. n. Grimes objected to the commissioners' report for the first time on appeal. The reviewing court held the objection was waived. *Grimes*, 211 S.W.2d at 958. Unlike Grimes, appellants filed objections with the trial court. They argue Rule 771 does not state a penalty for filing objections late, and the trial court erred in adopting the report. Texas Rule of Civil Procedure 5 provides in part as follows:

> When by these rules … an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion (a) with or without motion or notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous order; or (b) upon motion permit the act to be done after the expiration of the specified period where good cause is shown for the failure to act.

Tex.R. Civ. P. 5. If a party files objections late, Rule 5(b) authorizes the trial court "upon motion" to permit the late filing, if the movant shows good cause for the failure to act. *Id.*

The Texas Supreme Court cited Rule 5 in a case involving a late response to a

---

2. Appellants have withdrawn their first appel-     late issue.

motion for summary judgment. *See Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682 (Tex.2002). There, the Court held that a trial judge should grant a party's motion for leave to file a late summary judgment response when the party establishes good cause for the failure to timely respond. *Id.* at 688. The Court noted the rules do not mandate a summary judgment response, but a party who does not file a response faces the possibility of a summary disposition without regard to the merits. *Id.* at 687. A party establishes good cause in that context by showing (a) the failure to timely respond was not intentional or the result of conscious indifference, but the result of an accident or mistake, and (b) allowing the late response will occasion no undue delay or otherwise injure the party seeking a summary judgment. *Id.* at 688.[3]

■ Here, the trial judge held a hearing during which he heard argument from counsel setting out reasons for the late filing of the objections and testimony from appellants about the proper division of the property. The Conclusions of Law state, "The Plaintiffs' objection to the Commissioner's report was not timely[;] therefore, the report of the Commissioners became final." Based on the reconsideration hearing, the attorney's presentation of his explanation for the late filing of objections, the findings of fact and conclusions of law reciting the fact of the late filing, and the trial court's acceptance of the report, we conclude the trial court considered appellants' explanation and implicitly determined appellants did not establish good cause for the late filing. We review the

trial court's implicit ruling under an abuse of discretion standard, and apply the "good cause" principles articulated in Carpenter. *See id.* at 686–88.

■ We look to the record to determine whether the failure to file timely objections was an accident or mistake, and not the result of intentional disregard or conscious indifference. Trial counsel explained he had difficulty contacting his clients; though both Monroe and Grady testified at the reconsideration hearing, neither explained his difficulty. Counsel also offered a mistake of law excuse. He did not know of any deadline for filing objections to the report. Some mistakes of law are sufficient to negate conscious indifference. *Walker v. Gutierrez*, 111 S.W.3d 56, 64 (Tex.2003). However, not every mistake of law is a sufficient excuse, because otherwise "a party could, in any case, claim a mistake of law and be entitled to relief." *Id.; see also Bank One, Texas, N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex.1992). A party who files suit on a claim governed by a statute is "charged with knowledge of the statute and its requirements." *Gutierrez*, 111 S.W.3d at 64 (A claimant under former art. 4590i who filed an expert report that omitted a required element, under a purportedly mistaken belief that the report complied with the statute, did not negate a finding of intentional disregard or conscious indifference.).

■ Appellants did not file a written motion or present evidence of their excuses to the trial court; they offered no explanation until the reconsideration hearing a year later. Even if we assume the trial

---

**3.** We recognize that in *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex.2005), the Supreme Court raised a due process consideration because the trial court had, in effect, used deemed discovery admissions as a sanction, thereby precluding presentation of the merits. This case does not involve a sanction for failure to respond to a discovery request. The filing of objections to the commissioners' report is what triggers the trial; without objections being filed to a commissioners' report, no "trial of the issues" is anticipated by the Rule. *See* Tex.R. Civ. P. 771.

court could consider the attorney's argument alone in deciding whether appellants established good cause, a lack of knowledge of Rule 771 is not a sufficient excuse. A partition of real estate is a special proceeding governed by particular rules of civil procedure that describe what the petition must state, the court's role, and the roles of surveyors and commissioners, among other things. *See* Tex.R. Civ. P. 756–771. Appellants filed this partition proceeding and are charged with knowledge of the governing rules.

■ The trial judge's September 2002 letter put the parties on notice that the trial court "deemed" the report "accepted." Later, the trial court permitted appellants to offer testimony at the reconsideration hearing in support of their objections. Appellants offered no testimony as to why the circumstances justified the late filing, and made no showing that allowing the late objections would not cause undue delay or otherwise injure appellee. We do not find an abuse of discretion by the trial court.

■ Appellants contend Rule 771 is facially unconstitutional. To prevail on their claim, appellants bear the heavy burden of showing the rule has no possible valid application. *See In re Commitment of Fisher,* 164 S.W.3d 637, 655 (Tex.2005), *cert. denied,* — U.S. ——, 126 S.Ct. 428, 163 L.Ed.2d 326 (2005). Appellants argue interpreting Rule 771 as requiring acceptance of the commissioners' report when objections are filed late unconstitutionally deprives them of property rights. Appellants did not raise this issue before the trial court. The rules regarding preservation of error generally apply to constitutional claims. *See In re K.A.F.,* 160 S.W.3d 923, 928 (Tex.), *cert. denied, Car-*

*roll v. Faucheux,* — U.S. ——, 126 S.Ct. 483, 163 L.Ed.2d 364 (2005); *Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex.1993).[4] Even if appellants may raise this challenge for the first time on appeal, we are not persuaded. The rules do not "require" acceptance of a commissioners' report. In allowing objections and setting a filing deadline, Rule 771 provides a means of challenging the implementation of the partition and affords due process to a party who objects to the report. Rule 5 provides an opportunity to show cause for the late filing of objections. *See* Tex.R. Civ. P. 5. Appellants simply did not timely file their objections and did not meet their burden of establishing good cause for the late filing.

## THE PERSONAL PROPERTY

In their final issue, appellants argue the trial court erred in not finding conversion. When a party attacks the factual sufficiency of an adverse finding on an issue on which that party had the burden of proof, the party must demonstrate on appeal the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). The reviewing court considers all the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* (citing *Pool v. Ford Motor. Co.,* 715 S.W.2d 629, 635 (Tex.1986)).

■ To recover on a conversion cause of action, a plaintiff must prove there was an "unauthorized and wrongful assumption and exercise of dominion and control over

---

4. Appellants also argue the rule is unconstitutional as applied. They did not present this issue to the trial court and it is not preserved. *See In re Commitment of Fisher,* 164 S.W.3d at 656 (The trial court should be given an opportunity to rule on an "as applied" issue.); *see also In re K.A.F.,* 160 S.W.3d at 928.

the personal property of another, to the exclusion of or inconsistent with the owner's rights[.]" *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971). Monroe testified he lived from 1986 to late 1995 or 1996 on the 5.7–acre tract next to the land and home of his mother, Mary. Monroe worked on automobiles on the property and sold automobile parts; there were vehicle parts and approximately thirty-one vehicles in various states of disrepair on the tract. Monroe testified Mary told him she was going to have the cars and other personal property removed if he did not remove them. From the time he moved off the property in late 1995 or 1996 until he filed suit against his mother in February 2000, he did not retrieve his personal property; but he also indicated that before he filed suit he removed four vehicles himself. He testified a welding machine was also on the property when he left; he says he never received it back. Mary testified she knew of only one welding machine; she sold it, but Monroe was so upset she bought it back and returned it to him.

Jimmy Woods, Monroe's cousin, testified he lives across the street from Mary's daughter, Frankie Williams, who lived on the 5.7–acre tract. Sometime within the three months before the August 2005 hearing, Jimmy witnessed a car-crushing operation on the land. The car-crushing operation involved an eighteen-wheeler which had a front-loader that "went to crushing cars and stacking them." The operation took cars from Mary's land, as well as the 5.7 acre tract. Jimmy Woods described the salvage process as follows:

> It was a big 18–wheeler setting in the road . . . right in front of her house . . . And a little bit they unloaded the big front end loader off the truck. . . . Went up yonder behind Frankie's house and got a bunch of old trucks and cars and crushed them and stacked them about four high, loaded them on that 18–wheeler. It was all leaning; and they left . . . and left the loader setting there. And then later on after dark, I heard the loader roaring; and I could see the little old building, portable building, being moved around. . . . The next morning it was gone.

Jimmy testified, "I don't see how she [Mary] couldn't knew it. They went around her house and got her vehicles. . . ."

Mary testified there were many vehicles on the tract-Monroe's and hers. "And we had every car or truck we ever drove. When we quit driving it or it needed repair, we parked it up there. . . . And we just left it[.]" She explained that at some point between the time her husband died and Monroe filed suit, Monroe brought flatbed trailers, took a front-end loader, mashed cars two and three deep, carried them to Beaumont, and sold them. Mary estimated Monroe took about three trailer loads away.

Mary testified that after Monroe moved, she asked him to remove the remaining fifteen or twenty vehicles. She stated, "He removed the Mustangs that he wanted, but the rest of them he said he didn't want." Mary maintained she did not tell Monroe she would remove the vehicles if he failed to do so. She testified he was still removing vehicles after he filed suit. Once the trial court awarded the 5.7–acre tract to her, Monroe never asked her to allow him to remove his personal property. She acknowledged that, aside from the vehicles Monroe had removed from the property himself, she and others had a salvage crew remove everything else from the property approximately two months before the hearing. She testified she received $300 for her own vehicles that were removed from the land on which her home

is located. She testified she did not talk to anyone from the salvage company about removing any property from the 5.7–acres.

Also on the 5.7–acre tract was a storage building that belonged to Monroe. Mary described the salvage company's efforts to move it:

> It was tried to be moved and it just crumbled. .... And it had been raining in and leaking in that building all this time. It rotted down; and whenever they went to move it, it just crumbled.... [They] raked [the debris] up and burned it.

Mary testified she authorized them to get rid of it; "[I]t was a pile of trash."

Q. [Appellants' Attorney]. Whatever was there you authorized them to remove it off the property?

A. [Mary]. Yes, sir.

Q. Including the properties that were behind Frankie's mobile home?

A. Yes, sir, because I had received it, I thought, in the property settlement. Would you want 20 or 30 rusty cars on your property?

Mary later corrected herself. She said she only disposed of "what was mine," and she only authorized the company to take property at her house, not on the 5.7 acres. She explained Monroe's storage building was to be moved, not disposed of, but when the salvage people tried to move the building, it crumbled. Mary testified she did not contact the salvage company. She testified, "They just stopped there and said that's what they wanted, and I told them to go ahead and take mine."

Frankie Williams, Mary's daughter, testified she has resided on the 5.7–acre tract since 1997. She acknowledged she was responsible for the salvage company cleaning up the property after her cow was injured on rusted car parts. Frankie told the people from the salvage company that she wanted everything removed. The salvage company agreed to pay her $300. She testified Mary Woods did not call the company. Frankie asked the people from the salvage company if they would move the building, and they attempted to do so. However, when the man "hooked up to it, ... it just ... fell apart, fell to pieces." She disputed Monroe's account of the number of cars and parts on the property.

The trial judge as factfinder was the sole judge of the witnesses' credibility and the weight to be given their testimony. *See City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex.2005). The factfinder "may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary." *Id.* (footnotes omitted). We have considered all the evidence. The evidence is conflicting, and the judge was free to resolve the conflicts. Based on Mary's and Frankie's testimony, the judge reasonably could have determined Monroe abandoned some or all of the cars that were his, or Frankie rather than Mary exercised authority or control over any property that was Monroe's and had it removed. The trial court reasonably may have concluded Monroe failed to prove compensable damages caused by Mary. *See generally United Mobile Networks, L.P. v. Deaton,* 939 S.W.2d 146, 148 (Tex.1997) (failure to prove conversion damages). The failure to find conversion and award damages against Mary is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See generally Dow Chem. Co.,* 46 S.W.3d at 242 (standard of review).

Appellants' issues are overruled. The judgment is affirmed.

AFFIRMED.