**Opinion issued July 21, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00951-CV

———————————

**ROLAND FANNIN, AS DEPENDENT ADMINISTRATOR OF THE ESTATE OF JOYCE ELLEN FEREDAY, DECEASED AND SHANNON SANDERS, Appellants**

**V.**

**THOMAS FEREDAY, Appellee**

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Case No. CV27222**

---

## MEMORANDUM OPINION

Appellant Roland Fannin, as dependent administrator of the estate of his

deceased mother, Joyce Fereday, and Shannon Sanders, Joyce's daughter, appeal

the trial court's final judgment in a probate action declaring, among other things, that three assets are the separate property of Appellee Thomas Fereday, Joyce's surviving husband. Because the parties stipulated that one of these assets is community property, we render judgment that this asset is community property. But we hold that the trial court did not abuse its discretion in concluding that the other two assets, mineral rights for account number 1051465 and an ownership interest in Otex Resources, LLC, are Thomas's separate property. Accordingly, we affirm the trial court's judgment regarding the mineral rights for account number 1051465 and Otex.

## Background

Joyce and Thomas were married on November 8, 2003. After Joyce's death, Fannin, Joyce's son from a previous marriage, filed an application for dependent administration on behalf of Joyce's estate. As dependent administrator, Fannin sought a declaration that property held by Joyce and Thomas at the time of her death was community property. Thomas filed a counterclaim and sought a declaration that the disputed property was his separate property.

The relevant disputed assets were three: (1) a parcel of real property identified as Parcel ID 35484 on Poncho, Oak Island, Texas, (2) certain mineral rights for account number 1051465, and (3) an ownership interest in Otex Resources, LLC. At a bench trial, the parties stipulated that certain property,

2

including Parcel ID 35484, was community property. But they disputed whether the mineral rights for account number 1051465 and Otex were Thomas's separate property.

It is undisputed that Thomas formed and held an ownership interest in Union Crude Company before marrying Joyce. The mineral interest in account number 1051465 was an asset of Union Crude before Thomas married Joyce. It is also undisputed that Union Crude's assets were used to form Otex, which was incorporated on July 12, 2002—before Thomas and Joyce's marriage. After Joyce and Thomas married, Union Crude assigned the mineral interest to Thomas.

At trial, Appellants argued that the doctrine of judicial estoppel precluded Thomas from claiming that Otex was his separate property. In support, Appellants offered portions of Thomas's depositions from three previous cases. In those cases, Thomas testified that he held no ownership interest in Otex. Appellants also offered Otex's tax returns to prove that Thomas declared Joyce the sole owner of Otex. The trial court declined to apply judicial estoppel, and made the following relevant findings of fact and conclusions of law:

- "The only evidence presented of Decedent's ownership of Otex was Thomas Fereday's testimony in prior judicial proceedings, but the evidence showed conclusively that Thomas Fereday made false statements in his depositions"

- "Decedent was complicit with Thomas Fereday in making false statements taken in prior judicial proceedings"

- "The statements Thomas Fereday made in a deposition, even if false, could not effect a transfer of ownership under judicial estoppel or any other theory"

- "Thomas Fereday's statements under oath in prior judicial proceedings were not successfully maintained in those prior actions and resulted in unfavorable judgments, payments, and settlements."

- "Quasi-estoppel does not apply under the facts of the instant case."

- "Decedent misrepresented her ownership in Otex Resources, LLC"

- "[N]either good morals nor public policy will allow Decedent or her heirs to go into a court of equity to benefit from her deceptive acts done for the avowed purpose of deceiving and defrauding others, and then attempt for decedent or her heirs to benefit by the same deceptive acts"

In support of his separate property claim, Thomas offered Otex's Articles of Organization, which showed that he and his sons were the managers of Otex, and the divorce decree dissolving his previous marriage to Eugenia Fereday, which awarded the interest in Otex to Thomas. The trial court also admitted an operating agreement and membership certificates of Otex showing that Thomas owned 98% and that his two sons owned the remaining 2%.

Appellants offered conflicting evidence. Appellants offered a version of Otex's Articles of Organization that they asserted was on file with the Texas Secretary of State. It did not reflect that Thomas and his sons were the managers of Otex. Appellants also offered (1) Thomas's prior deposition testimony to prove that Joyce personally guaranteed loans to Otex and owned 99% of Otex, (2)

4

Joyce's deposition testimony that she funded the formation of and had an ownership in Otex, and (3) various documents that Joyce signed as Otex's President, CEO, and Secretary.

In its final judgment, the trial court declared that the Oak Island parcel, the mineral rights for account number 1051465, and Otex were Thomas's separate property. The trial court entered the following relevant findings of fact and conclusions of law:

- "Parcel ID 35484 on Poncho, Oak Island, Texas is the separate property of Thomas Fereday"

- The mineral rights for account number 1051465 are the separate property of Thomas Fereday" and they are his "separate property from inception and the characterization never changed throughout his marriage to Decedent."

- Otex "is the separate property of Thomas Fereday, Trent Fereday, and Travis Fereday, with Thomas Fereday owning 98 percent of Otex, and Trent and Travis Fereday each owning one percent of Otex."

- "Otex was Thomas Fereday's separate property from inception and its characterization never changed throughout his marriage to Decedent."

- "Union Crude Company is the separate property of Thomas Fereday"

- "Union Crude Operating Company is the separate property of Thomas Fereday"

5

## Discussion

In three issues, Appellants contend that the trial court erred in concluding that the Oak Island parcel, the mineral rights for account number 1051465, and Otex are Thomas's separate property.

### A.    Standard of Review and Applicable Law

Separate property includes "property owned or claimed by the spouse before marriage" and "property acquired by the spouse during marriage by gift, devise, or descent." TEX. FAM. CODE ANN. § 3.001 (West 2006).  Under the inception of title rule, the characterization of property as separate or community is determined by its character at inception.  *Leax v. Leax*, 305 S.W.3d 22, 33 (Tex. App.—Houston [1st Dist.]  2009, pet. denied); *McClary v. Thompson*, 65 S.W.3d 829, 834 (Tex. App.—Fort Worth 2002, pet. denied).   Inception of title is the time at which a party first has a right of claim to the property by virtue of which title is finally vested.  *Smith v. Smith*, 22 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Strong v. Garrett*, 148 Tex. 265, 271, 224 S.W.2d 471, 474 (1949)).

Property possessed by either spouse during or on dissolution of marriage is presumed to be community property.  TEX. FAM. CODE ANN. § 3.003(a) (West 2006).  To overcome the community property assumption, a party claiming marital property as separate property must prove the claim with clear and convincing

6

evidence. *Id.* § 3.003(b) (West 2006). Clear and convincing evidence is defined as that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see also Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.). In general, mere testimony that property is separate property, without any tracing, is insufficient to rebut the community presumption. *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Smith*, 22 S.W.3d at 145. When an asset is purchased during marriage with funds traceable solely to a spouse's separate estate, the asset may be appropriately characterized as separate property. *Phillips v. Phillips*, 296 S.W.3d 656, 674 (Tex. App.—El Paso 2009, pet. denied).

"We review a trial court's division of property under an abuse of discretion standard." *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied) (citing *LaFrensen v. LaFrensen*, 106 S.W.3d 876, 878 (Tex. App.—Dallas 2003, no pet.)). "[I]n family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standard of review; as a result, legal and factual insufficiency are not independent grounds of reversible error, but instead

7

constitute factors relevant to our assessment of whether the trial court abused its discretion." *Moroch*, 174 S.W.3d at 857 (citing *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.); *Beaumont Bank N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). Thus, to determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion. *Moroch*, 174 S.W.3d at 857. The applicable sufficiency review "comes into play with regard to the first question." *Id.* (quoting *Boyd*, 131 S.W.3d at 611). We must then determine whether, based on the evidence, the trial court made a reasonable decision. *Id.* Stated another way, the party challenging the trial court's characterization must first establish error by challenging the legal or factual sufficiency of the evidence to support the property's characterization and must then show that because of the mischaracterization, the trial court abused its discretion. *See Viera v. Viera*, 331 S.W.3d 195, 207 (Tex. App.—El Paso 2011, no pet.).

In conducting a legal sufficiency review under a clear and convincing standard, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex.

2002). We "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* at 266. When the trial court has acted as factfinder, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *Woods v. Woods*, 193 S.W.3d 720, 726 (Tex. App.—Beaumont 2006, pet. denied); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). In a factual sufficiency review of a finding subject to a clear and convincing standard of proof, we must give due deference to evidence that a factfinder could reasonably have found clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

**B.     Analysis**

### 1.     The Oak Island parcel

In their first issue, Appellants contend that the trial court erred in characterizing the Oak Island parcel as Thomas's separate property because the parties stipulated that this asset was community property. We agree.

Before trial, the parties orally stipulated that "Parcel ID 35484 on Poncho, Oak Island, Texas" was community property:

> COUNSEL FOR THOMAS: And 1G, where we had it struck from the stipulation itself, we now agree that it is community.

9

THE COURT: 1G?

COUNSEL FOR THOMAS: That's on the stipulation.

THE COURT: So you're saying the $10,000 for the Parcel 35484 - - it's agreed community?

COUNSEL FOR THOMAS: Yes, sir.

COUNSEL FOR APPELLANTS: It was on our original stipulation, but we've marked it out because they - -

THE COURT: Okay.

COUNSEL FOR APPELLANTS: - - they disagreed with it, and now they agree with it.

THE COURT: Okay.

Despite this stipulation, the trial court awarded the Oak Island parcel as Thomas's separate property.

Thomas agrees that he made the stipulation, but argues on appeal that he did so by mistake. He contends that the characterization of the Oak Island parcel as separate or community property is a question of law and, therefore, the trial court could not have accepted the stipulation regarding its characterization.

"A stipulation is 'an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto.'" *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998) (quoting *Ortega-Carter v. Am. Int'l Adjustment*, 834 S.W.2d 439, 441–42 (Tex. App.—Dallas 1992,

writ denied)).  An oral stipulation made in open court is binding under Rule 11 of the Texas Rules of Civil Procedure.  TEX. R. CIV. P. 11 (agreement between attorneys or parties touching any pending suit will be enforced if made in open court and entered of record).  Courts recognize that parties may stipulate that property is separate or community in nature.  *See Estate of Hanau v. Hanau*, 730 S.W.2d 663, 665 (Tex. 1987) (recognizing that parties stipulated certain property items were separate and community).

Once the parties stipulated on the record that the Oak Island parcel was community property, the characterization of the parcel was no longer in issue.  *See Shepherd*, 962 S.W.2d at 33.  Accordingly, the trial court abused its discretion in finding, contrary to the parties' stipulation, that the Oak Island parcel is Thomas's separate property.  *See id.*; *White v. Harris-White*, No. 01-07-00521-CV, 2009 WL 1493015, at *9 (Tex. App.—Houston [1st Dist.] May 28, 2009, pet. denied) (mem. op.) (trial court erred in awarding property as one spouse's separate property because "the trial court no longer had a dispute" when parties had stipulated that items were separate property of other spouse).

We sustain Appellants' first issue.

## 2.     Mineral interest for account 1051465

In their second issue, Appellants contend that the trial court erred in characterizing the mineral interest for account 1051465 as Thomas's separate

property. They argue that Thomas failed to rebut the presumption that the mineral interest for account 1051465, which he acquired during the marriage, is community property, because he did not offer evidence that he purchased the asset with separate funds. Thomas responds that the trial court correctly characterized the mineral interest for account 1051465 as his separate property because he established that he obtained the mineral interest from Union Crude and that his interest in Union Crude was his separate property. He argues that Texas courts have held that once the separate character of property is determined, it is not altered by a sale, exchange, or substitution. We agree with Thomas.

It is undisputed that Thomas held an ownership interest in Union Crude before he and Joyce married in 2003. It is also undisputed that Union Crude owned the mineral interest for account 1051465 at that time. The evidence at trial showed that Union Crude transferred the mineral interest for account 1051465 to Thomas, individually, in 2005, during his marriage to Joyce. Thomas offered documentary evidence of the transfer at trial—a notarized assignment reflecting that Union Crude assigned the mineral interest to him. And Thomas argues in his brief that the fact that he, acting on behalf of Union Crude, transferred the asset from Union Crude to himself does not alter its separate character. In other words, Thomas argues that his separate interest in Union Crude does not become

community merely because he decided to change the form in which he held that separate property.

Thomas relies on *In re Marriage of Grisham*, No. 10-09-00429-CV, 2010 WL 4570266, (Tex. App.—Waco 2010, pet. denied). In *Grisham*, the parties disputed whether the assets of a company formed during the marriage belonged to the community. *Id.* at *1. The husband created the company during the marriage with assets of companies that he owned and operated before the marriage. *Id.* Because the husband traced the assets of the company formed during the marriage back to his separate property, the *Grisham* court held that they remained his separate property. *Id.* at *2.

This case is like *Grisham* because Thomas traced the mineral interest back to Union Crude, which was his separate property, and there is no evidence or contention by Appellants that the transfer by Union Crude to Thomas was income that would have belonged to the community as opposed to a mere exchange in the form in which Thomas held his separate asset. Accordingly, we conclude that the trial court could have reasonably formed a firm belief that the mineral interest for account 1051465 is Thomas's separate property. *See id at *2* ("Property established to be separate remains separate property regardless of the fact that it may undergo any number of mutations and changes in form."); *In re J.F.C.*, 96 S.W.3d at 266 (appellate courts review "all the evidence in the light most favor

able to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.").

We overrule Appellants' second issue.

### 3. Otex Resources, LLC

In their third issue, Appellants contend that the trial court erred in characterizing Otex Resources, LLC as Thomas's separate property. We disagree.

#### (a) Judicial Estoppel

Appellants first argue that the trial court erred by failing to apply judicial estoppel. According to Appellants, judicial estoppel applies to preclude Thomas from claiming Otex is his separate property because he testified in previous judicial proceedings that he had no ownership interest in Otex.

"The doctrine of judicial estoppel . . . is a rule of procedure based on justice and sound public policy . . . to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008). It precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009).

"Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New*

*Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815 (2001) (citations omitted). Consequently, the circumstances under which judicial estoppel may properly be applied "are probably not reducible to any general formulation of principle." *Id.* Nonetheless, courts have identified several factors to consider when determining whether to apply the doctrine, including: (1) whether the party's subsequent position is "clearly inconsistent" with its prior position; (2) whether the party successfully persuaded the prior court to accept the position in question, such that it would appear "either the first or the second court was misled"; and (3) whether the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51, 121 S. Ct. at 1815. We review a trial court's decision of whether to invoke judicial estoppel for an abuse of discretion. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

Here, the trial court declined to apply judicial estoppel to preclude Thomas from claiming Otex as his separate property. Notably, judicial estoppel is an equitable doctrine and discretionary. *See New Hampshire*, 532 U.S. at 750, 121 S. Ct. at 1815. We thus conclude that the trial court did not abuse its discretion by declining to apply judicial estoppel in this case. Although Thomas took clearly inconsistent positions about whether he owned Otex, the trial court could have concluded that he was not successful in persuading the prior courts in accepting his position. It could also have reasonably concluded that allowing Thomas to keep

15

Otex as his separate property would not give Thomas an unfair advantage or impose an unfair detriment on Joyce's estate.

### (b) Sufficient evidence supports finding that Otex is Thomas's separate property

Appellants further contend that Thomas failed to establish that Otex is his separate property by clear and convincing evidence.

The undisputed evidence at trial showed that Otex was formed in 2002, before Thomas and Joyce's marriage, and while Thomas was still married to Eugenia. The trial court admitted into evidence the divorce decree from Thomas's marriage to Eugenia that awarded Thomas "all rights and privileges" of Otex on October 15, 2003, Otex's Articles of Organization showing that Thomas and his sons were the managers of Otex, Otex's operating agreement reflecting that Thomas owned 98% and his sons owned the remaining 2% of Otex, and membership certificates dated July 20, 2002 showing Thomas and his son's ownership of Otex.

Appellants offered conflicting evidence to support their community property claim. For example, they offered Joyce's and Thomas's deposition testimony that Joyce loaned money to form Otex, personally guaranteed loans to Otex, and owned a 99% interest in Otex, as well as evidence that Joyce was Otex's President, CEO, and Secretary and a version of Otex's Articles of Organization that did not list Thomas and his sons as managers.

16

Although there was conflicting evidence regarding the ownership of Otex, the trial court was the sole judge of the credibility of the witnesses and the weight to give their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (fact finder is sole judge of credibility and may choose to believe one witness and disbelieve other witnesses); *Zagorski*, 116 S.W.3d at 317–18 (credibility of husband and wife in divorce action falls strictly within purview of trial court). The trial court could have reasonably chosen to believe Thomas's evidence—the Articles of Organization, membership certificates, and operating agreement showing Thomas's ownership interest in Otex to the exclusion of Joyce—and to disregard Appellants' evidence. We thus conclude that the trial court could have reasonably formed a firm belief that Otex is Thomas's separate property and that it did not abuse its discretion in finding Otex is Thomas's separate property. *See Monroe v. Monroe*, 358 S.W.3d 711, 717 (Tex. App.—San Antonio 2011, pet. denied) (trial court did not abuse its discretion in finding property was husband's separate property when evidence showed it was formed from property owned by husband before marriage); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 613 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (inception of title doctrine fixes character of property interests at time party first acquires right or claim to property).

We overrule Appellants' third issue.

17

## Conclusion

We reverse the portion of the trial court's judgment characterizing the Oak Island parcel as separate property and render judgment that the parcel is community property.  We affirm the remainder of the trial court's judgment.


                                        Rebeca Huddle
                                        Justice

Panel consists of Chief Justices Radack and Justices Bland and Huddle.