In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00013-CV
_____

CHARLES MURRAY, Appellant

V.

C.I.A. HIDDEN FOREST, INC. AND NANCY CRAMER, Appellees

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 17-09-11342-CV

**MEMORANDUM OPINION**

Appellant Charles Murray ("Murray") appeals the trial court's judgment in favor of Appellees C.I.A. Hidden Forest, Inc. ("the Property Owners Association") and Nancy L. Cramer ("Cramer") (collectively "Appellees"), granting a permanent injunction and ordering Murray to remove a mobile home from certain property. We affirm.

1

Procedural Background

In September 2017, the Property Owners Association and Cramer filed an original petition seeking a permanent injunction against Murray. The petition explained that Cramer was a property owner in Section 5 of the Hidden Forest Estates Subdivision ("the subdivision"). According to the petition, in February 2014, Murray made an "Affidavit to the Public" regarding Lots 136 through 139 in Section 5 of the subdivision for an onsite wastewater treatment system to be installed. Murray also made an "Affidavit Acknowledging Need to Join Properties" seeking to join the four lots because the onsite sewage system was located on all four lots. Murray subsequently moved a double-wide mobile home onto the four lots, which were then owned by Lester Ruthstrom.

According to the plaintiffs, Lots 136 through 139 were subject to (1) restrictions recorded in Volume 776, Page 484 through Page 487 of the Deed Records of Montgomery County, Texas; and (2) restrictions recorded in Volume 963, Page 95 of the Deed Records of Montgomery County, Texas.[1] Plaintiffs alleged that the relevant restrictions stated:

---

[1] The parties stipulated that a document titled "Restrictions" was recorded in Volume 776, Pages 484 through 487 of the Deed Records of Montgomery County on June 15, 1972, which states in part "No trailer houses, mobile homes, or kindred structures will be permitted."

2

> 1. b. Only a residence, garage, or tool house may be built on residential lots, and they must conform in appearance and construction generally to other dwellings in the Hidden Forest Estates subdivision. No trailer houses, mobile homes, or kindred structures will be permitted.

Plaintiffs alleged that a deed restriction letter was sent to Ruthstrom and to Heather Lininger[2] in March 2014. In April 2014, the Property Owners Association president spoke with Ruthstrom, and the next month, the president told the attorney for the Property Owners Association that Lininger was willing to have the mobile home moved out, however the mobile home was not removed. In September 2014, a second attorney (and the plaintiffs' attorney in this proceeding) sent another deed restriction letter to Ruthstrom, but neither Ruthstrom nor Murray removed the mobile home.

In October 2014, Ruthstrom deeded all four lots to Murray and the Property Owners Association sent a "Notice of the Opportunity to Meet with the Board" letter to Ruthstrom, Murray, and Lininger. According to the petition, in the meeting, Murray told the Property Owners Association that "there was no way a court would enforce these restrictions because there were other mobile homes in the subdivision." The petition asserted that although there were some mobile homes in the subdivision, they were in sections where there are no specific restrictions against trailers and

---

[2] Murray testified at trial that he and Lininger have a child and live together and that Lininger had Murray's "proxy[.]"

3

mobile homes. According to the plaintiffs, Murray had told the Property Owners Association Board and Board members that he had no intention of complying with the restrictions against mobile homes. Plaintiffs sought a court order requiring Murray to remove the mobile home from Lots 136 through 139 and sought a permanent injunction prohibiting Murray from moving a "trailer house, mobile home, or kindred structure" on any lot in Sections 4 or 5.[3]

In October 2017, Murray filed an answer asserting a general denial. In July 2018, Murray filed an amended answer, asserting the affirmative defenses of waiver and estoppel and asserting that "Plaintiffs'[] attempt to enforce against him the covenants and regulations at issue violates Texas law as arbitrary, capricious, and discriminatory."

Evidence at Trial

Testimony of Doug Walker

Doug Walker testified that he was on the Board of the Property Owners Association and described how the Board dealt with requests for variances:

> Q. What process did the [Property Owners Association] file for approval of a variance to the deed restrictions?
>
> A. We would ask people to follow the process of bringing in their plans, making sure they had all the permits in place, and then sit down and

---

[3] Plaintiffs also sought to recover certain costs and fees, which are not at issue in this appeal.

4

discuss a timeline, and we asked for updates as far as what they were doing.

Q. Okay. So would the [Property Owners Association] consider allowing somebody to bring in a trailer or a mobile home if they had plans, a timeline, and, of course, a septic system, and their water and electrical?

A. Correct, we would.

Walker testified that he had a conversation with Heather Lininger at a Board meeting about what Lininger and Murray needed to show in order to temporarily have a trailer on the property: a sewer permit; water installed; and a plan for what they wanted to build, how long it would take to build, and how long they would want a trailer on the property.

According to Walker, the Property Owners Association was not well-funded and sometimes could barely cover basic expenses, and the Board did not have funds to hire attorneys for lawsuits on trailer violations. Walker recalled that, when he left the Board, there were three trailers in Section 5. Walker testified that one trailer had been modified so that it did not look like a trailer. One of the trailers was on the Warren property, and Walker explained that the statute of limitations barred any action against that violation. Walker testified that the Property Owners Association had successfully sued another property owner who moved five travel trailers onto his lot.

Testimony of Laura Warren

Laura Warren testified that her family obtained permission from the land developer to put a mobile home on their lots in 1984. She also testified that in 1996 they obtained permission from the developer to replace the original mobile home with a newer one.

Testimony of Nancy Cramer

Plaintiff Nancy Cramer testified that she had lived in the subdivision for about fourteen years, and she joined this lawsuit because she did not want "to live in a trailer park." Cramer testified that the Property Owners Association had not filed a lot of lawsuits on deed restriction violations because it does not have very much money.

Testimony of Tammy Parker

Tammy Parker, the president of the Property Owners Association, testified that she had lived in the subdivision for eleven years. Exhibit 21 was admitted into evidence, which Parker explained was a map of Section 5 and which identified houses by a pink mark and mobile homes or travel trailers by an orange mark. Parker testified that the Warren trailer had been there for thirty years and was "[d]eveloper excluded." Parker further testified that the Weidner home was a single-wide mobile home that had been modified and was about four-fifths a two-story home: Parker

6

also identified a travel trailer in Section 5 which the Property Owners Association has referred to the Montgomery County Health Department for failure to install a septic system. Parker testified that there are twenty-five "nontrailer" homes in Section 5. According to Parker, the Property Owners Association was asking the trial court to order Murray to remove the mobile home from Section 5 within nine months.

According to Parker, Murray moved his mobile home into Section 5 in March or April 2014. Parker testified that the attorney for the Property Owners Association sent a letter to Ruthstrom about the violation because Ruthstrom owned the property at that time. Parker recalled that they notified Ruthstrom, Lininger, and Murray that they could meet with the Board about the matter, and when a meeting occurred, Murray said no one could make him move his trailer or mobile home out of Section 5.

Testimony of Arvella Dancaster

Arvella Dancaster testified that she had lived in the subdivision for over ten years and she is the acting secretary and treasurer of the Property Owners Association. Dancaster testified that when a property owner wants to move a mobile home onto a lot, the Property Owners Association requires them "to have electric, a septic system, and water, and a timeline, plans of some sort, and reports to the

board[]" and that Murray never brought the Board plans or a timeline for his anticipated construction. According to Dancaster, Murray told the Board that "nobody can make him move his trailer."

Testimony of Charles Murray

Murray testified that he contracted with Ruthstrom in 2012 to purchase four lots in Section 5. Murray recalled that, in the sales contract, he agreed to abide by the deed restrictions for the property, but that Ruthstrom did not know what the deed restrictions were, and Ruthstrom told Murray he would have to find them out himself. Murray testified that he moved a mobile home onto the property in 2014 and told a member of the Board he wanted a trailer on the property temporarily until he could build a house. Murray testified that he had complied with the deed restriction because he asked permission to bring in his mobile home and he obtained permits and utilities. According to Murray, the Property Owners Association told him it would not have a problem with his mobile home if he got permits and utilities and that Lininger presented that information to the Board. Murray agreed that he did not present plans or a timeline to the Board, but that he did not know what he was going to build, and he did not obtain anything in writing from the Property Owners Association permitting him to move in a mobile home. When asked whether anyone

gave him permission to move a trailer onto his property, he replied "[t]he State of Texas."

Plaintiffs offered numerous documents into evidence. Among the exhibits were the Board meeting minutes from February 2012, regarding a request for a waiver to put a mobile home on a lot in Section 5, which stated "[a]fter some discussion it was decided that if they bring proof they have water, septic and electricity to the property it would be taken under consideration." A margin note read "Heather[.]" Minutes from a June 2013 Board meeting were admitted, which read in relevant part:

> Heather asked about putting a trailer on her lot while they are building a house. It would take about a year. She was asked to put her plans in writing with a time frame. Would have to have electric and septic installed first. Then she would be required to make progress reports to the board.

On October 10, 2018, the trial court signed an order rendering judgment for the plaintiffs, finding that Murray had placed a trailer or mobile home on his property in violation of the deed restrictions, and ordering Murray to remove the trailer or

9

mobile home.[4] Murray filed a motion for new trial, which was overruled by operation of law. Murray then appealed.[5]

Issues

On appeal, Murray argues that the trial court erred in entering judgment because Appellees had waived the right to enforce the deed restriction at issue. According to Murray, the Property Owners Association had "frequently" declined to enforce the deed restriction and had knowingly permitted mobile homes in Sections 4 and 5, thereby waiving the right to enforce that restriction against Murray. Murray also argues that principles of estoppel prevented enforcement of the deed restriction at issue against him. Murray argues that the Property Owners Association had permitted him to put a mobile home on the property until he could install a permanent structure, and that by taking such a position, the Property Owners Association is estopped from taking a contrary position and enforcing the deed restrictions against him. The parties do not dispute that the deed restrictions for Section 5 prohibit mobile homes.

---

[4] The judgment also awarded attorney's fees to the plaintiffs; however, attorney's fees are not challenged in this appeal.

[5] We note that the clerk's record includes "Plaintiffs' Cross-Notice of Appeal[,]" but Appellees' brief does not raise any separate issues.

<u>Standard of Review</u>

Injunctive relief is appropriate upon a showing of the following elements: (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). "Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities." *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 220 (Tex. App.—Dallas 2005, no pet.); *see also Triantaphyllis v. Gamble*, 93 S.W.3d 398, 401-02 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). A party must substantially violate a deed restriction before the trial court may issue a permanent injunction. *See Tien Tao Ass'n, Inc. v. Kingsbridge Park Cmty. Ass'n, Inc.*, 953 S.W.2d 525, 529-30 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

We review an order granting a permanent injunction for an abuse of discretion. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 642 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *See Worford v. Stamper*, 801 S.W.2d

11

108, 109 (Tex. 1990). The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204 (citing *Johnson v. Fourth Ct. of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985); *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978)). We defer to the trial court's determination of credibility because, as the factfinder in a bench trial, the trial court is the exclusive judge of the facts, the witnesses' credibility, and the weight given to testimony. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000); *Woods v. Woods*, 193 S.W.3d 720, 726 (Tex. App.—Beaumont 2006, pet. denied).

A party seeking an injunction has the burden of showing that a clear equity demands the injunction. *See Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 890 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd w.o.j.). Ordinarily, injunctive relief may only be granted upon a showing of (1) a wrongful act; (2) imminent harm; and (3) irreparable injury, and (4) the absence of an adequate remedy at law. *See Jim Rutherford*, 25 S.W.3d at 849. When an injunction is sought to enforce a deed restriction, however, the burden of proof is altered, and the movant "'is only required to prove that the defendant intends to do an act that would breach the restrictive covenant.'" *Southwyck, Section VI Homeowners' Ass'n, Inc. v. Southwyck Cmty.*

12

*Ass'n, Inc.*, No. 14-16-00139-CV, 2017 Tex. App. LEXIS 9789, at *14 (Tex. App.—Houston [14th Dist.] Oct. 19, 2017, no pet.) (mem. op.) (quoting *Jim Rutherford*, 25 S.W.3d at 849); *Nash v. Peters*, 303 S.W.3d 359, 362 (Tex. App.—El Paso 2009, no pet.).

Waiver

"Waiver is the intentional relinquishment of a known right and is either made expressly or indicated by conduct that is inconsistent with an intent to claim the right." *Reytec Constr. Res., Inc. v. Baptist Hosps. of Se. Tex.*, No. 09-15-00085-CV, 2016 Tex. App. LEXIS 12534, at *23 (Tex. App.—Beaumont Nov. 23, 2016, no pet. (citing *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003)). Waiver is an affirmative defense on which the defendant bears the burden of proof. *See Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 485 (Tex. 2016) (explaining that a defendant bears the burden of proof on affirmative defenses); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996) (citing *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)).

To defeat enforcement of the restrictive covenant at issue, the nonconforming property user must prove that existing violations are so great as to lead the mind of the average person to reasonably conclude that the restriction in question has been abandoned and its enforcement waived. *See Martin v. Romero*, No. 09-10-00496-

13

CV, 2011 Tex. App. LEXIS 2531, at **6-7 (Tex. App.—Beaumont Apr. 7, 2011, no pet.) (mem. op.) (citing *Finkelstein v. Southampton Civic Club*, 675 S.W.2d 271, 278 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)). To determine whether a restrictive covenant has been abandoned or its enforcement waived, we consider such factors as "the number, nature, and severity of the existing violations, any prior enforcements of the restriction, and whether it is still possible to realize to a substantial degree of the benefits of the restriction despite the violations." *Architectural Control Comm. of Oak Terrace Estates v. McCormick*, No. 09-10-00495-CV, 2011 Tex. App. LEXIS 9114, at **3-4 (Tex. App.—Beaumont Nov. 17, 2011, no pet.) (mem. op.) (citing *Finkelstein*, 675 S.W.2d at 278). A property owner's actual notice that he is in violation of a deed restriction weighs against waiver. *See Jim Rutherford*, 25 S.W.3d at 851-52.

In support of his argument, Murray points out that plaintiff Cramer admitted she had not made any attempt to sue other property owners who had trailers or mobile homes on their property. Parker, the President of the Property Owners Association testified that since she had been on the Board, the Property Owners Association has not had an attorney send a letter to any other property owners with mobile homes on their lots in Section 5.

14

The evidence also showed that one of the mobile homes in Section 5—on the Warren property—was placed with express permission of the developer. Another of the mobile homes in Section 5 had been modified to look like a two-story house. And, the Property Owners Association had referred the only other mobile home in Section 5 (other than Murray's) to the Montgomery County Health Department. Walker, a member of the Property Owners Association Board, also testified that the Property Owners Association had previously successfully sued another property owner who had moved five travel trailers onto his lot.

On this record, we cannot say that the trial court abused its discretion. The trial court could have reasonably concluded that the other alleged violations of the deed restriction were different in nature and not so prevalent, and that the average person would not reasonably conclude that the Property Owners Association had waived enforcement of the restriction. *See Martin*, 2011 Tex. App. LEXIS 2531, at **6-7 (citing *Finkelstein*, 675 S.W.2d at 278). We overrule Murray's first issue.

<u>Estoppel</u>

Equitable estoppel is an affirmative defense that "generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). The defendant bears the burden of proof. *See Phila. Indem. Ins. Co.*, 490 S.W.3d at

15

485; *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 838 (Tex. 1968). "The elements required for equitable estoppel are: '(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations.'" *Stanley v. CitiFinancial Mortg. Co.*, 121 S.W.3d 811, 820 (Tex. App.—Beaumont 2003, pet. denied) (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998)).

Murray argues that the Property Owners Association indicated it would permit Murray's mobile home and it is estopped from taking a contrary position. Although Murray testified at trial that the Property Owners Association told him it would not have a problem with his mobile home if he got permits and utilities, Dancaster testified that the Property Owners Association informed Murray that, to have a mobile home on his property, he must comply with the requirements for consideration of a mobile home, and that Murray never presented plans or a timeline as requested. Parker testified after the Property Owners Association's attorney notified Ruthstrom that the mobile home violated a deed restriction, the Property Owners Association offered to meet with Ruthstrom, Lininger, and Murray, and in the meeting that occurred, Murray said that no one could make him move his mobile

16

home. Certain Board meeting minutes were admitted into evidence showing the Property Owners Association had informed Murray (through his "proxy" Lininger) what was required for the Board to consider granting a variance for Murray's mobile home. Murray testified that he had approached the director for Section 1, who told him that "they could possibly allow" Murray to put a trailer on his property or give "temporary permission[.]" Murray also testified that the Board informed him that if he got permits and utilities, "they would not have a problem" with his mobile home.

The trial court as factfinder could have believed the Property Owners Association's witnesses and disbelieved Murray. *See Turner*, 38 S.W.3d at 120; *Woods*, 193 S.W.3d at 726. On this record, the trial court could have reasonably concluded that the Property Owners Association advised Murray it would *consider* granting Murray a variance *if* he submitted proof of utilities and a written plan, but that Murray did not present the required proof or plans to the Property Owners Association. Accordingly, the trial court did not abuse its discretion in concluding that Murray had not met his burden to prove equitable estoppel, as the evidence did not reflect that Murray had relied on a false representation by the Property Owners Association. *See Stanley*, 121 S.W.3d at 820. We overrule Murray's second issue.

Having overruled both Murray's issues, we affirm the trial court's judgment.

17

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on December 3, 2019
Opinion Delivered January 9, 2020

Before Kreger, Horton and Johnson, JJ.